# CHARLESTON.

MILLER v. STERRINGER.

Submitted September 5, 1908.   Decided November 9, 1909.

1.  INSANE PERSONS—*Appointment of Committee.*
    The county court, upon notice to the party proceeded against, has power to find that one is *non compos mentis* and to appoint a committee for him.   (p. 171).

2.  EQUITY—*Demurrer to Bill—Hearing.*
    Upon demurrer directed to particular allegations, the general purpose of the whole bill will be considered, so as to test their proper relation to some general equity to which plaintiff shows himself entitled.   (p. 171).

3. CONTRACTS—*Validity—Incompetency of Party.*

Equity will relieve one from a contract made by him in drunkenness, though his reason may not have been wholly overthrown, where fraudulent advantage has been taken, or where the drunkenness has been brought about by the other party. (p. 172).

Appeal from Circuit Court, Tucker County.

Bill by John D. Miller, committee, against Jacob A. Sterringer. Decree for plaintiff, and defendant appeals.

*Affirmed.*

*J. Wm. Harman* and *J. P. Scott,* for appellant.

*Cunningham & Stallings* and *Chas. D. Smith,* for appellee.

ROBINSON, JUDGE:

The decree sought to be reversed annuls a deed made by David C. Miller to Jacob A. Sterringer. At the death of a son Miller inherited nearly $1,700.00. Theretofore he had been a fairly industrious and frugal man, although at frequent periods addicted to drinking. He was 60 years of age. Upon coming into possession of this money, near the beginning of the year 1906, he quit work and began to drink excessively. He continued to drink daily for weeks. His money was rapidly squandered. His mind became greatly impaired. Through the advice of friends who were interested in protecting his money, he had purchased a house and lot in Parsons, which was conveyed to him on the 6th day of February, 1906. For the property a fair value was paid, $700 cash. On March 28th, of that year, he conveyed the property to Sterringer for the sum of $500, of which only $200 was paid. For the residue he accepted Sterringer's note, payable in one year, without interest. On the same day, Miller returned the cash payment and the note to Sterringer, for safe-keeping, as he said. Sterringer was a saloon-keeper, whose place Miller frequented and at which he drank. Immediately after the conveyance to Sterringer, the plaintiff was appointed a committee for Miller. By the committee this suit was promptly instituted, attacking that conveyance.

These questions are presented for our consideration: Should the demurrer to the bill have been sustained? If not, is the decree supported by the evidence?

Two grounds of demurrer to the bill are assigned. One is, that it shows the appointment of the plaintiff as committee to have been by the county court, which action it is asserted is absolutely void for want of jurisdiction in the county court to appoint a committee for one *non compos mentis.* If that appointment is void the plaintiff could not sue and the bill should have been dismissed. The bill shows that notice was given to Miller of the proceeding to appoint a committee for him. The answer to this assignment is, that, under the Constitution and laws of this State, the county court has power to appoint a committee when notice has been given to the party for whom the appointment is to be made, even though there has been no previous inquisition as to insanity. Const., Art. 8,. section 24; Code, chapter 39, section 9; *Lance* v. *McCoy,* 34 W. Va. 416; *Evans* v. *Johnson,* 39 W. Va. 299; *Karnes* v. *Johnson,* 58 W. Va. 595; and other cases. The other ground of demurrer assigned is that the bill sets up a legal demand against Sterringer, not cognizable in equity, for moneys in his possession belonging to Miller. Such construction of the bill is not borne out by its context. The bill does, in connection with seeking annulment of the deed, seek to have Sterringer account for the cash payment returned to him by Miller, evidently with a view of crediting Sterringer, on a restitution of the consideration he paid for the house and lot, with what may be found remaining in his hands. Sterringer claims to have returned a part of the money to Miller and that he is entitled to retain some of it for liquor sold to Miller. These claims are denied by the committee. It is entirely proper for the court to find what amount Sterringer actually has, as the bill sought and the decree directs, in furtherance of a purpose to put the parties in *statu quo.*

The decree is fully justified. In some particulars the evidence is conflicting, it is true, but material facts and circumstances glaringly appear and strongly support the decree. These facts and circumstances make the case distinctly one of fraud and imposition. It may not be a case of absolute want of mental capacity to make a deed. Though the intoxication may have been of less degree than total at the time the deed was executed, yet clearly the evidence establishes that it was the means by which the grantor was misled and deceived to his prejudice. Cases like this one do not so much involve questions of in-

capacity as they involve questions of fraud and undue influence. Where it is shown that only partial intoxication has been made the means of practicing a fraud in obtaining a deed, or securing a fraudulent advantage, wholly against conscience, equity will interpose. Miller was weak and to a great extent imbecile from the continued use of liquor. It would seem that for weeks preceding the making of the deed he purchased at least a pint of liquor a day at Sterringer's saloon, so great was his thirst for strong drink. In the short space of two or three months he had squandered practically all his money except 'that which he had invested in the house and lot. A thousand dollars was lavished right and left in that time by one whose real needs and station in life required but small expenditure. Witnesses in the best position to know say that his reason was seriously affected. Sterringer's saloon was his rendezvous, above all others, although he drank elsewhere. The one object of his desires and appetite was most easily obtainable at this saloon. Sterringer became his ideal and confidant. He believed Sterringer "had been good to him." Such an excuse he gave for that inadequate price for which he sold his property. To such an extent had Miller gone, so debauched in liquor was he, that he was willing to sacrifice anything to get it. Sterringer must have known this. Another person, on the same day, refused to deal with Miller for the property because he believed him incompetent from drink. Sterringer knew the price was grossly inadequate. Everything points to this fact. He tries to excuse the inadequacy by saying that Miller sold to him lower than he would have sold to any other person. And this asserted excuse also indicates the control and influence he had obtained over the old man. Even Sterringer's attorney who drew the deed was impelled to inquire at the time why Miller should have bought for $700 cash and sold for only $500, and that partly on time without interest. No sane man, except for reasons which do not appear in this record, would buy a property for $700 cash, a fair value, and in less than sixty days sell it for $500 on the terms we have stated, when the same property was bringing him an income of $8.00 per month. Nor could anyone accept such a bargain from an old man who was drinking, knowing his condition, without being guilty of fraud. Sterringer knew Miller's peculiar weakness. He continually sold him

liquor, and then took advantage of the very weakness which that liquor produced. The very transaction itself shows that Sterringer obtained an unfair advantage from Miller's infirmity. A deed so obtained is promptly overthrown by the gracious court of equity.

That greatest of Virginia law commentators concisely states: "The plea of drunkenness was formerly regarded with as little favor in civil as it still is in criminal cases. For although Lord Coke classes a drunkard as *non compos mentis*, yet he allows him no indulgence on that account. 'As.for a drunkard,' says he, 'who is *voluntarius daemon*, he hath (as has been said) no privilege thereby, but what hurt or ill he doth, his drunkenness doth aggravate it.' But for more than a century this rigorous doctrine has been much relaxed, and it is agreed that drunkenness invalidates, or renders voidable all contracts and transactions where, (1), The drunkenness was brought about by the opposite party; (2), A fraudulent advantage was taken of it; (3), It deprived the party of his reason, and of an agreeing mind. * * * * The mere fact that one is drunk when he enters into a contract is no ground for setting it aside, at least in equity, unless under one or the other of the circumstances above stated; but when a person's habitual addiction to intoxication renders him extremely subject to imposition, such habits, though not carried to an excess constituting absolute incapacity, lay a ground for strict examination whether any instrument executed by him does not in itself, or in the attendant circumstances, contain evidence that advantage was taken of those habits." 2 Minor's Institutes, (4th Ed.), 644. In the same connection, this author further says that when the drunkenness is brought about by the party obtaining the contract, the act is so flagrant a badge of fraud that it always renders the contract voidable, both at law and in equity; and that where a fraudulent advantage is taken of the drunkenness, this, too, is so direct a fraud as always to render the transaction voidable in all courts.

The principle that is particularly applicable to the case under consideration is that equity will relieve one from a contract made by him in drunkenness, though his reason may not have been wholly overthrown, where fraudulent advantage has been taken, or where the drunkenness has been brought about by the

other party. It is recognized clearly in 17 Amer. and Eng. Enc. of Law, 402; 14 Cyc. 1105; 1 Story's Eq. Jur. 231; 2 Pomeroy's Eq. Jur., section 949; and 2 Page on Contracts, section 905. Some of the many cases in point are: *Cooke* v. *Clayworth,* 18 Ves. 12; *Reynolds* v. *Waller,* 1 Wash. 164; *Wigglesworth* v. *Steers,* 1 H. & M. 70; *Samuel* v. *Marshal,* 3 Leigh 567; *White* v. *Cox,* 3 Hayw. 79; *Hotchkiss* v. *Fortson,* 7 Yerg. 67; *Crane* v. *Conklin,* 1 N. J. Eq. 346; *Thackrah* v. *Haas,* 119 U. S. 499; *Jones* v. *McGruder,* 87 Va. 360; *Weldon* v. *Colquitt,* 62 Ga. 449.

In applying this principle, the following expressions have been used: "If a party has been led into a hard and disadvantageous bargain, while excited by liquor, equity avoids it. And the same rule applies to persons whose minds are enfeebled by habitual intoxication, although not actually intoxicated." *Birdsong* v. *Birdsong,* 2 Head 289. "If, when a man is so drunk as to render him an easy prey to the fraudulent designs of another, an unfair advantage is taken of his situation to procure from him an unreasonable bargain, a court of equity will interfere and rescind the contract, not on the ground of his drunkenness, but of the fraud" *Calloway* v. *Witherspoon,* 5 Ired. Eq. 128. A Canadian chancellor, in the consideration of a case very similar to the one before us, has said: "It is manifest that a man of intemperate habits, a slave to strong drink, when dealing with the tavern-keeper at whose house he lives, and from whom he obtains the liquor which he craves, and with which he daily stupifies or maddens himself, is as liable to be overreached and needs for himself and his family or heirs the protection of this court at least as much as a client who deals with his solicitor, or as a patient who has transactions with his medical attendant. No man is more helpless than a drunkard is in the hands of those who obtain his confidence, and to whom he looks day by day for the gratification of the morbid craving which has possessed him; and the modern doctrine of both law and equity is against giving up even a poor drunkard, or a drunkard's property, to be the prey of the rapacious and unprincipled." *McGregor* v. *Boulton,* 12 Grant Ch., (U. C.) 288.

The decree in this case being in accord with well recognized principles of equity, it is affirmed.

*Affirmed.*