# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## TALIAFERRO V. EMERY.

### March 13, 1919.

1. CONTRACTS—*Drunkenness*—*Case at Bar.*—In a. suit for specific performance, it appeared that defendant was an inebriate, and complainant plied him with whiskey pending a contract for the exchange of real estate between them. Defendant contended that in addition to the property of complainant there was a money consideration to be paid him under the contract of exchange, which was executed by him while drunk, and unexplained evidence in the case supported this contention of the defendant. This contention was insisted on by defendant throughout the case, and could not be ignored in considering a supposed ratification by him of the contract of exchange signed by him while drunk.

2. CONTRACTS—*Drunkenness.*—Drunkenness invalidates or renders voidable all contracts and transactions where (1) the drunkenness was brought about by the opposite party; (2) a fraudulent advantage was taken of it; (3) it deprived the party of his reason, and of an agreeing mind. The mere fact that one is drunk when he enters into a contract is no ground for setting it aside, at least in equity, unless under one or the other of the circumstances above stated; but, when a person's habitual addiction to intoxication renders him extremely subject to imposition, such habits, though not carried to an excess constituting absolute incapacity, lay a ground for strict examination whether any instrument executed by him does not in itself, or in the attendant circumstances, contain evidence that advantage was taken of those habits.

3. CONTRACTS—*Drunkenness.*—When the drunkenness of a party to a contract was brought about by the other party, the act is so flagrant a badge of fraud that it always renders the contract voidable, both at law and in equity; and when a fraudulent advantage is taken of the drunkenness, this, too, is so direct a fraud as always to render the transaction voidable in all courts.

Appeal from a decree of the Circuit Court of Prince William county. Decree for complainant. Defendants appeal.

*Reversed.*

The opinion states the case.

*C. E. Nicol* and *A. T. Embrey*, for the appellants.

*Thos. H. Lion, H. Thornton Davies,* and *John S. Barbour,* for the appellee.

WHITTLE, P., delivered the opinion of the court.

This suit was brought by appellee, C. H. Emery, to enforce specific performance of a contract for exchange of properties between himself and appellant, C. D. Taliaferro; and, incidentally, to set aside a deed to two lots in Quantico, subsequently conveyed by Taliaferro and wife to appellant, G. W. Wallace, that were included in the deal. The contract bears date May 17, 1917, and by its terms Emery agreed to convey ninety-two acres of land in Prince William county with a dwelling and store house thereon to Taliaferro in exchange for five acres of land near Bell Fair Mills, in Stafford county, similarly improved, and the two vacant lots in Quantico above referred to. By prearrangement, on the morning of May 17th, Taliaferro rode on horseback from his home to Emery's, a distance of about five miles, where the negotiation was carried on. Taliaferro in his answer denies the binding effect of the contract, a copy of which is exhibited with the bill and purports to have been signed by the parties and acknowledged before a justice. He avers that in the preliminary discussion of the stipulations of the proposed contract it developed that the parties could not agree, Emery demanding an even exchange of properties, while respondent insisted upon $1,000 boot; and so the trade was declared off. But later on Emery plied Taliaferro with whiskey, a supply of which he had on hand, to the point that he became intoxicated; and while he was in that condition and unconscious of what he was do-

ing, procured his signature and acknowledgment of the paper. The answer gives respondent's view of the disparity in values of the two properties, and points out certain alleged defects of title to the mineral rights in the Emery property, and the existence of a lien of $300 thereon, the latter of which was subsequently discharged. Respondent insists that in the circumstances detailed a court of equity should not grant specific performance.

By consent of parties the cause was referred to a master commissioner to ascertain and report the facts, returning the depositions with his report. The commissioner's findings were adverse to Taliaferro, especially upon the controlling questions of his intoxication and insistence upon the provision that he should receive $1,000 in money by way of owelty of exchange. Whereupon, the circuit court passed the decree under review, overruling the exceptions and confirming the commissioner's report, and setting aside the deed from Taliaferro and wife to Wallace conveying the two lots in Quantico, and decreeing specific performance of the contract of exchange.

[1] We are not unmindful of the weight to which, ordinarily, a commissioner's report is entitled upon findings of facts, and in the conclusion we have reached will not transgress that rule, as correctly understood, in the instant case. Yet, we are of opinion that the commissioner and court have erroneously applied the law of the case to its facts. It is true that in some inconclusive particulars the evidence is conflicting; but the outstanding, dominant facts and circumstances make out a case of imposition and unfairness which should not receive the sanction of a court of equity. That Taliaferro was an inebriate is not denied; nor is it controverted that Emery plied him with whiskey pending negotiations for the exchange of properties. The divergence of opinion among witnesses is only in degree as to the extent of his intoxication. It appears that, while Emery's

messenger had gone in quest of Merchant, the justice who redrafted the contract of exchange filed with the bill and took the acknowledgment of the parties, Taliaferro lay on the counter in the store asleep or in a stupor for three hours, and was aroused by Emery after Merchant's arrival to sign and acknowledge the paper. On the same occasion, but later, he signed a second paper of similar import, that Emery had had prepared by an attorney at Manassas, which was witnessed by Merchant. Let us accept Emery's version of what occurred on the arrival of Merchant, after he had awakened Taliaferro. He testifies that he said to him (Taliaferro): "You know what we have done, don't do nothing unless you know what you are doing." Again he says on cross-examination: "I just simply waked him up and said, 'Mr. Taliaferro, do you know you done some business here,' and he said, 'By G——, I never get too drunk to do business,' and we walked right into the dining room and I handed Mr. Merchant the contract I had drawn up and he said he would change it a little, and asked if it suited Mr. Taliaferro, and he said it did. When Mr. Merchant had drawn this contract he asked if that was what we wanted and he said it was all right." On his way home that evening, Taliaferro attempted to ride into the front porch to a dwelling, which he had mistaken for a gate, and the owner took the horse by the bit and turned him into the road. Mrs. Taliaferro testified that "he was very much under the influence of liquor" when he reached home, so much so that he could not tell her anything about his trip. She says with respect to the deed that Emery subsequently brought to their home for execution, when she learned that he could not give a clear title to the property, and had got her husband drunk and made him sign an agreement which left out the $1,000 clause, she refused to execute the deed and burnt it up. With respect to this $1,000, the commissioner reports: "* * * in view of the fact that no

mention is made of the sum of $1,000 claimed by the said Taliaferro, in his answer, and there is no evidence other than the statement of the said Taliaferro that any such sum had been agreed to, your commissioner is of opinion that the contract should prevail and the said deeds should be passed free from any addition." This finding fails to recognize the significance of a letter written May 31, 1917, to Taliaferro by Emery's counsel at his request. The writer, after reciting the fact that Emery and wife had executed a deed conveying the ninety-two acres to Taliaferro, says: "This deed is now ready for delivery and Mr. Emery is in position to comply with the *remainder of his consideration* in the exchange of these properties, and requests that you make a deed conveying to him the property you agreed to convey him. * * * Kindly let me know the day and place where we can meet to exchange properties by delivery of deeds and *payment of the money."* (Italics supplied.) In the absence of explanation, and the record affords none, this must be construed as an admission that in addition to the ninety-two acre tract there was a money consideration to be paid under the contract of exchange. That contention had been insisted on by Taliaferro throughout the case, and must not be ignored in considering his supposed ratification when sober of the contract of exchange signed by him while drunk.

[2, 3] The law applicable to cases of this sort is concisely stated by Mr. Minor in his Institutes. After giving the ancient rule, he says: "But for more than a century this rigorous doctrine has been much relaxed, and it is agreed that drunkenness invalidates or renders voidable all contracts and transactions where (1) the drunkenness was brought about by the opposite party; (2) a fraudulent advantage was taken of it; (3) it deprived the party of his reason, and of an agreeing mind * * * The mere fact that one is drunk when he enters into a contract is no

ground for setting it aside, at least in equity, unless under one or the other of the circumstances above stated; but, when a person's habitual addiction to intoxication renders him extremely subject to imposition, such habits, though not carried to an excess constituting absolute incapacity, lay a ground for strict examination whether any instrument executed by him does not in itself, or in the attendant circumstances, contain evidence that advantage was taken of those habits." 2 Minor's Inst. (4th ed.), 644. And the author further declares, that when the drunkenness is brought about by the party obtaining the contract, the act is so flagrant a badge of fraud that it always renders the contract voidable, both at law and in equity; and that when a fraudulent advantage is taken of the drunkenness, this, too, is so direct a fraud as always to render the transaction voidable in all courts. This rule is well settled. 1 Elliott on Contracts, sec. 440, and cases cited in note; *Miller* v. *Sterringer*, 66 W. Va. 169, 66 S. E. 228, 25 L. R. A. (N. S.) 596.

For these reasons we are of opinion to reverse the decree of the circuit court, and enter an order here dismissing the bill with costs.

*Reversed.*