CHARLES LAWTON

v.

EMILY WALKER

Record No. 822146

April 25, 1986

Present: All the Justices

*Joseph A. Pennington (Connor & Pennington,* on brief), for appellant.

*T. Jeffrey Salb (Breeden, MacMillan & Greene,* on brief), for appellee.

COMPTON, J., delivered the opinion of the Court.

In this appeal of a commercial law case, the main issue is whether the purchaser of a promissory note was a holder in due course.

In December 1981, appellant Charles Lawton sued appellee Emily Walker for $4,950 on a bearer note made by Walker in 1976 and held by Lawton, who claimed to be a holder in due course. Following a bench trial, the court below entered judgment for the defendant. We awarded the plaintiff this appeal.

Lawton, a retired welder, purchased the note in question on April 15, 1980 from Martin Swersky, an acquaintance who had been in the aluminum siding business. The note consisted of blank spaces on a printed form completed with pen and ink as follows:

"$12,000.00/xx                                        Jan 1 1976
  120 payment of $100.00/xx    after date  I  promise to
pay to the order of    Bearer       Twelve Thousand and
————00/xx Dollars at _____
Value received
   No.____ Due 10th of Month        /s/ Emily V. Walker
                          Witness: /s/ Stephen Allen Miller"

Lawton paid Swersky approximately $5,000 for the note which, at the time of Lawton's purchase, had a balance due of $7,050. As part of the transaction, Lawton received from Swersky a title certificate issued to "Emily V. Walker" for a 1976 Ford automobile and a payment book in Walker's name with the notation, "Terms:

$100 for 120 months. Amount of Note $12,000.00 (car)." Lawton testified he "bought other things" from Swersky at the time as a "package deal." The "other things" were "mortgages" on two houses owned by Walker. Responding on cross-examination, Lawton answered affirmatively to the question, "You purchased it in bulk, you purchased everything at one time?"

Lawton further testified he was unaware of any "problems" with the note when he acquired it. He said he knew that the note was for purchase of an automobile from Swersky by Walker. He stated that the transaction between Swersky and Walker was "a straight cash sale" without interest in which Swersky "allowed her to pay over the period of ten years." Lawton did not know the actual cost of the vehicle when Swersky sold it to Walker.

According to the evidence, Walker made regular monthly payments to Swersky from February 1, 1976 to the date of the Swersky-Lawton deal and thereafter to Lawton. Walker ceased paying in October 1981, leaving a balance due of $4,950.

Over plaintiff's objection, Walker was permitted to testify concerning many details of the underlying transaction with Swersky. According to defendant, in 1976 she bought a used 1976 Ford automobile from Swersky, agreeing to pay him $7,200 for the vehicle over a period of five years. She produced at trial the original new-car invoice for the vehicle which showed the price to be $5,671. She denied agreeing at any time to pay Swersky the sum of $12,000.

Walker admitted that her signature appeared on the note in question but denied signing the document. She testified, "I haven't signed anything." Walker claimed that she had paid a total of $7,250 through October 1981, thus fulfilling her original bargain with Swersky. Neither Swersky nor Miller, the purported witness to Walker's signature on the note, testified.

In remarks from the bench following the trial, the court below ruled that Lawton was not a holder in due course. The basis for the ruling is not clear. At several points during his comments, the judge seemed to decide that Lawton was not a holder in due course because a bulk transaction was involved. The court concluded that because Lawton was not a holder in due course, he was "subject to the defenses." Accordingly, the court determined that Walker had "satisfied" her contract with Swersky. The judgment order subsequently entered in favor of the defendant does not assign a reason for the decision.

Pertinent to our decision are the following italicized portions of Code § 8.3-302, a part of the Uniform Commercial Code (UCC):

"§ 8.3-302. Holder in due course.—(1) *A holder in due course is a holder who takes the instrument*

(a) for value; and

(b) *in good faith; and*

(c) *without notice* that it is overdue or has been dishonored or *of any defense against or claim to it on the part of any person.*

(2) A payee may be a holder in due course.

(3) *A holder does not become a holder in due course of an instrument*:

(a) by purchase of it at judicial sale or by taking it under legal process; or

(b) by acquiring it in taking over an estate; or

(c) *by purchasing it as part of a bulk transaction not in regular course of business of the transferor.*

(4) A purchaser of a limited interest can be a holder in due course only to the extent of the interest purchased."

On appeal, the parties do not dispute that the document in question is an "instrument," meaning a "negotiable instrument," § 8.3-102(e), nor do they dispute that Lawton took the instrument for "value." However, the plaintiff insists he also took the note "in good faith" and "without notice."

The defendant asserts the plaintiff did not act in good faith and had notice of certain defenses to the payment of the note. The defendant also argues that the trial court "did not err in finding that the plaintiff purchased the note in question as part of a bulk transaction not in the regular course of business of the transferor."

Additionally, defendant contends that even if the plaintiff was a holder in due course, he took the note subject to the "real" defense of fraud in the factum outlined in § 8.3-305(2)(c). That section provides, in part:

"To the extent that a holder is a holder in due course he takes the instrument free from

. . . .

(2) all defenses of any party to the instrument with whom the holder has not dealt except

. . . .

(c) such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms. . . ."

The difficulty with this contention is that the trial court did not find fraud in the factum. Indeed, the court would have erred in so finding because there was insufficient evidence to sustain that defense. Thus, we reject this contention and, for the reasons that follow, reject defendant's arguments with respect to good faith, notice of defenses, and bulk transaction.

On the subject of good faith, the UCC provides that the term "means honesty in fact in the conduct or transaction concerned." § 8.1-201(19). Good faith does not encompass a concept of negligence; the test is a subjective one. An act is deemed to be done in good faith, within the meaning of the UCC, if it is done honestly, whether or not it is performed negligently. *Moore* v. *Potomac Savings Bank*, 160 Va. 597, 606-07, 169 S.E. 922, 925 (1933) (pre-UCC case in accord with UCC definition, Virginia Comment, Code § 8.3-304). Under this test, good faith is determined by looking to the mind of the particular holder who asserts that he is a holder in due course, and not by focusing on what the state of mind of a reasonably prudent person should have been. *Breslin* v. *New Jersey Investors, Inc.*, 70 N.J. 466, 471, 361 A.2d 1, 3-4 (1976).

In the present case, the evidence dealing with the circumstances of the Lawton-Walker transaction is insufficient to raise an inference of lack of good faith on Lawton's part. He testified that the instant transaction was his "first try" at the business of purchasing commercial paper. He stated he was unaware of any "problems" with the note. Lawton thought the Swersky-Walker transaction was "a straight cash sale," without interest, in which Swersky allowed Walker to pay for the automobile over a period of ten years. Nothing in the evidence suggests, and the trial court did not find, that Lawton's subjective intent was dishonest.

The statutory requirements of taking "in good faith" and "without notice" are interrelated concepts. Virginia Comment,

Code § 8.3-304. Insofar as pertinent here on the subject of notice, Code § 8.3-304 provides:

"(1) The purchaser has notice of a claim or defense if
  (a) the instrument is . . . so irregular as to call into question its validity, . . . or
  (b) the purchaser has notice that the obligation of any party is voidable in whole or in part, . . .
  . . . .
  (7) In any event, to constitute notice of a claim or defense, the purchaser must have knowledge of the claim or defense or knowledge of such facts that his action in taking the instrument amounts to bad faith. . . ."

Code § 8.1-201(25) provides that a person has "notice" of a fact when "(a) he has actual knowledge of it; or (b) he has received a notice or notification of it; or (c) from all the facts and circumstances known to him at the time in question he has reason to know that it exists."

In arguing the plaintiff took the note with "notice," defendant contends that, from all the facts and circumstances known to Lawton at the time he purchased the note, he is deemed to have been aware of the "rotten" transaction between Walker and Swersky. Defendant points out that the instrument involved "only" the sale of a 1976 Ford automobile, purchased by an individual, for the alleged price of $12,000 interest free, to be paid in 120 installments, with no evidence of financing or disclosure statements required by consumer-protection laws. Walker also contends that the underlying obligation "was at a minimum voidable in part," under § 8.3-304(1)(b), because it should have been obvious to Lawton that the loan was made at a usurious rate of interest. The "irregularities," the argument continues, demonstrate a scheme "detrimental" to Walker, and Lawton's "protestations of ignorance . . . were nothing more than an effort to take advantage of an obviously shady transaction." Again, the difficulty with defendant's argument on this issue is that the record fails to support her conclusions.

According to paragraph 2 of the UCC Official Comment, the irregularity contemplated in § 8.3-304(1)(a) is "notice to the purchaser of something wrong." More specifically, the fact that the purchaser may have acted negligently or may have been af-

fected with notice of suspicious circumstances is insufficient under § 8.3-304 to deny him the status of holder in due course. *Crum* v. *Hanna*, 140 Va. 366, 369, 125 S.E. 219, 220 (1924). Under the UCC and the cases, the holder must have either actual knowledge of the infirmity in the instrument or knowledge of such facts that his action in taking the instrument amounts to bad faith. *National Bank of Suffolk* v. *American Bank and Trust Company*, 163 Va. 710, 723-24, 177 S.E. 229, 234 (1934); *City National Bank* v. *Hundley*, 112 Va. 51, 70 S.E. 494 (1911).

Even though Lawton may have been negligent and even though the circumstances may have been suspicious, we cannot say from this evidence that he acted in bad faith. Lawton's actual knowledge of the underlying transaction was limited to an awareness of a note with no "problems" which had been given in connection with a "straight cash sale," payments to be made over an extended period. Under these circumstances, Lawton cannot be charged with knowledge that an exorbitant amount of interest was concealed within the sum due or that the Swersky-Walker transaction was "rotten," especially when the evidence requires pure speculation to reach such conclusions. A naked denial by Walker that she executed the instrument or that she agreed to pay Swersky $12,000 furnishes no basis for a contrary finding. And, significantly, the trial court did not find that Lawton acted in bad faith and with notice of a claim or defense.

In conclusion, we will comment briefly on defendant's bulk-purchase contention made on brief, which was all but abandoned during oral argument. Under § 8.3-302(3)(c), one is not a due course holder if he purchased the instrument "as part of a bulk transaction not in regular course of business of the transferor." According to paragraph 3 of the Official Comment, this subsection was intended to state existing law and to cover "a few situations in which the purchaser takes the instrument under unusual circumstances which indicate that he is merely a successor in interest to the prior holder." *See Baach* v. *Bank of Pocahontas*, 157 Va. 274, 282-83, 160 S.E. 68, 70-71 (1931). The Comment states that the subsection "applies to bulk purchases lying outside of the ordinary course of business of the seller," as when a reorganized or consolidated corporation takes over in bulk the assets of a predecessor. But here, there was a transfer from Swersky to Lawton in the regular course of Swersky's commercial dealing. It is true that Lawton answered affirmatively on cross-examination to the ques-

tion calling for the legal conclusion whether he purchased the instrument "in bulk." Nonetheless, the evidence as a whole shows clearly that Lawton was not taking over Swersky's entire assets in bulk under unusual circumstances indicating he was Swersky's successor in interest. Consequently, Lawton's status as a holder in due course was not affected by the nature of the transfer.

Therefore, we will reverse the judgment in favor of the defendant and enter final judgment for the plaintiff in the amount of $4,950.

*Reversed and final judgment.*