In re Joseph Eugene WILLS, Debtor.

Thomas A. SCHULTZ, Jr. and Rex L. Sturm, in their capacities as trustees and substitute trustees, Plaintiffs,

v.

Joseph Eugene WILLS, et al., Defendants.

Bankruptcy No. 89–01374–AB, 90–52–AB.

United States Bankruptcy Court, E.D. Virginia, Alexandria Division.

April 11, 1991.

Joseph W. O'Malley, Bethesda, Md. and Roy B. Zimmerman, Alexandria, Va., for debtor.

Kurt C. Rommel, Thomas E. Helf, Frank, Bernstein, Conaway & Goldman, Tysons Corner, Va., for William L. Walde.

Malcolm M. Mitchell, Jr., Ross, Marsh, Foster, Myers & Quiggle, Alexandria, Va., for Thomas L. Swarek, D. Cecil Culbertson, Doyle C. Culbertson, Jr. and Nancy F. Culbertson.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Chief Judge.

This matter arises out of objections filed by Joseph Eugene Wills (the "Debtor"), a Northern Virginia real estate developer, to three proofs of claim. The first claim, filed by Thomas L. Swarek ("Swarek"), relates to two promissory notes, each dated November 10, 1988, made by the Debtor and payable to the order of Swarek 30 days after issuance in the aggregate principal amount of $2,171,459.40 (collectively, the "Notes"). The second proof of claim was filed by D. Cecil Culbertson, Doyle C. Culbertson, Jr. and Nancy F. Culbertson (collectively, the "Culbertsons") who claim to have a beneficial interest in the Notes. The third proof of claim was filed by William L. Walde ("Walde") who contends that he is the holder in due course of the Notes entitling him to the amounts evidenced thereby free and clear of any defenses asserted by the Debtor. Swarek and the Culbertsons, who concede that Walde is the holder in due course of the Notes, filed their proofs of claim to protect their interests in the Notes in the event Walde's claims are satisfied and there is an additional amount owing by the Debtor under the Notes. The three claims are not intended to be duplicative. On July 17, 1990, the parties agreed to have the validity of the three proofs of claim determined within this adversary proceeding.

All three claims arose from a written contract entered into in June 1988 between the Culbertsons and the Debtor (the "Purchase Agreement") whereby the Culbertsons agreed to sell, and the Debtor agreed to buy, certain real property located in Loudoun County, Virginia known as Bluff Farm and Harrison Island (collectively, the "Properties") for $4,500,000 in cash. Prior to the closing of the transaction, the Debtor informed Doyle Culbertson that the Debtor was having cash flow problems and that, instead of paying all cash for the

Properties, he wanted to finance part of the purchase price by issuing the Notes.

During discussions over the payment of the purchase price, the Culbertsons advised the Debtor that the Culbertsons were negotiating with Swarek to purchase farm land in Mississippi as part of a tax free exchange to shelter the Culbertsons' capital gain resulting from the sale of the Properties. The Culbertsons determined that, by naming Swarek as the nominal seller of the Properties, they could effect a tax free exchange. This arrangement was acceptable to the Debtor and on November 9, 1988, the parties amended the Purchase Agreement to reflect that Swarek would be the seller of the Properties and that at the closing the Debtor would be required to pay $250,000 in cash and deliver the Notes for the remainder of the purchase price. With documents naming Swarek as the seller, the Culbertsons, Swarek and the Debtor met at the Debtor's home office on November 10, 1988, for the closing on which date the Debtor delivered the Notes to Swarek. On the morning of November 11, 1988, the Culbertsons, Swarek and the Debtor took the closing documents to a hotel in Arlington, Virginia, where they had their signatures on some of the closing documents acknowledged by a notary public.

On November 23, 1988, the Culbertsons and Swarek sought and received a $1,700,-000 loan from Walde and pledged the Notes and the liens securing the Notes as collateral to secure their loan. The Debtor defaulted on his obligation to pay the Notes in full on their due date, December 10, 1988, thereby causing the Culbertsons and Swarek to default on their loan from Walde.

In July 1989, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. In November 1989, Walde filed a proof of claim based on his contention that he is the holder of the Notes. In January 1990, the plaintiffs filed a motion seeking, *inter alia,* relief from the automatic stay to foreclose certain real property. In May 1990, the Debtor filed an answer which asserted that the "alleged transfer of property ... was void by reason of the fact that the [Debtor] was inebriated and had been so for an extended period of time and incapable of entering into a contract."

In September 1990, Walde, asserting that he is a holder in due course with respect to the Notes and therefore not subject to the defense raised by the Debtor, filed a motion for summary judgment. In response, the Debtor asserted that the Debtor was

> mentally and physically incompetent to enter into, form or consummate a contract and that he was further subject to a court order ..., which barred him from entering into the transaction [contemplated by the Purchase Agreement]. It is further [the Debtor's] position that the Culbertsons, Swarek and Walde knew, were put on notice, or should have known of these disabilities (which rendered the entire transaction and particularly, the ... Notes, void or voidable) and that therefore the ... Notes are invalid as to [the Debtor].

*Memorandum in Support of the Debtor's Opposition to Motion for Summary Judgment* at 2.

After affording the parties extensive opportunity for discovery, this Court conducted a hearing on Walde's summary judgment motion where this Court examined the parties' pleadings, affidavits, depositions, answers, interrogatories and admissions on file. On October 17, 1990, this Court granted Walde summary judgment. Motions for reconsideration of the summary judgment were filed by the Debtor, the Official Committee of Unsecured Creditors and Gloria H. Wills. Such motions were denied.

On October 17 and 18, 1990, this Court heard evidence from the Debtor relating to his affirmative defense of incapacity to the proofs of claim filed by the Culbertsons and Swarek. After the close of the Debtor's evidence, the Culbertsons and Swarek filed a motion to dismiss pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. The Culbertsons and Swarek contended that the Debtor failed to prove by clear and convincing evidence that the Debtor's intoxication or manic depression rendered the Debtor unable to understand

the nature and consequences of his acts in purchasing the Properties from the Culbertsons and Swarek. On November 14, 1990, this Court granted their motion to dismiss. This Memorandum Opinion supplements the findings and conclusions set forth in the record of the hearings held on October 17, 1990, and November 14, 1990.

In order to grant Walde's motion for summary judgment, this Court must determine that there is no genuine issue as to any material fact and that Walde is entitled to a judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Although several facts in this matter are in dispute, to determine whether those facts are material we must examine the substantive law governing the holder in due course doctrine. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The effect of achieving holder in due course status is that the holder takes an instrument free from certain defenses, such as the defenses asserted by the Debtor. *See* Va.Code Ann. § 8.3–305(2) (1965) ("To the extent that a holder is a holder in due course he takes the instrument free from ... all defenses of any party to the instrument with whom the holder has not dealt...."). To attain holder in due course status, a person must be a holder who takes a negotiable instrument for value, in good faith and without notice of any de-, fense or claim to it. Va.Code Ann. § 8.3–302(1) (1965). The parties in this matter do not dispute that the Notes are negotiable instruments and that Walde is a holder who took the Notes for value. However, the Debtor contends that Walde did not take the Notes in good faith and without notice of any defense. The Debtor further contends that even if Walde is a

holder in due course, a state court decree allegedly prohibiting the Debtor from executing certain contracts, including the Notes, relieves the Debtor from its obligations thereunder.

The issue of whether one is a holder in due course of a note does not arise until it is first determined that the maker has a defense to payment that would be good against a mere holder. *See* Comment 3, Va.Code Ann. § 8.3–307(3) (1965) ("Until it is shown that a defense exists the issue as to whether the holder is a holder in due course does not arise."); *J & B Schoenfeld Fur Merchants, Inc. v. Kilbourne & Donohue, Inc.,* 704 F.Supp. 466, 470 (S.D.N.Y. 1989) ("[T]he issue of whether plaintiff is a holder in due course does not arise until it is shown by defendants that a defense exists which would be good against a mere holder.").[1] The Debtor has the burden of establishing all defenses by a preponderance of the evidence. *See* Comment 3, Va.Code Ann. § 8.3–307 (1965). Although in ruling on the Culbertsons' and Swarek's motion to dismiss this Court found that the Debtor was not legally incompetent at the time he executed the Notes and therefore has no defense to payment, our conclusion that Walde is a holder in due course does not depend solely on such a finding.

In Virginia, to constitute notice of a claim or defense, a person taking a negotiable instrument must have knowledge of such claim or defense or knowledge of such facts as would amount to bad faith. Va. Code Ann. § 8.3–304(7) (1965)[2]. Section 3–304(7), a nonuniform amendment to the U.C.C. adopted only by Virginia and New York (*see* N.Y.U.C.C. Law § 3–304[7] [McKinney 1984]), requires that questions of notice be determined by a subjective test of actual knowledge rather than an objective test. *See* Va.Code Ann. § 8.1–201(25) (1965) ("A person ... has 'knowledge' of a

---

1. In accordance with the Virginia Code, we look not only to decisions of Virginia courts dealing with holder in due course issues but also to decisions from other jurisdictions to assist this Court in its analysis. *See* Virginia Comment, Va.Code Ann. § 8.3–101 (1965) ("Decisions from other jurisdictions are persuasive authority in interpreting the statute.").

2. The text of Section 8.3–304(7) reads, in pertinent part, as follows: "In any event, to constitute notice of a claim or defense, the purchaser must have knowledge of the claim or defense or knowledge of such facts that his action in taking the instrument amounts to bad faith...." Va. Code Ann. § 8.3–304(7) (1965).

fact when he has actual knowledge of it."); *Lawton v. Walker*, 231 Va. 247, 252, 343 S.E.2d 335, 338 (1986); *Hartford Accident & Indemnity Co. v. American Express Co.*, 74 N.Y.2d 153, 162–163, 544 N.Y.S.2d 573, 577–78, 542 N.E.2d 1090, 1094 (1989). By adopting Section 8.3–304(7), Virginia retained a concept contained in Section 56 of the pre-U.C.C. Uniform Negotiable Instruments Law, Va.Code Ann. § 6–408 (1950) (repealed 1965), which concept was rejected by the drafters of the U.C.C. *See* Note, *Notice and Good Faith Under Article 3 of the Uniform Commercial Code*, 51 Va.L. Rev. 1342, 1353 (1965).

■ Notice of defenses against an instrument, therefore, means "[o]nly actual, subjective knowledge, ... [of defenses]...." *J & B Schoenfeld*, 704 F.Supp. at 473. Notice of suspicious circumstances is insufficient to deny holder in due course status. *Lawton*, 231 Va. at 253, 343 S.E.2d at 338. According to a recent New York Court of Appeals decision interpreting New York's version of Section 3–304(7), "[h]olders in due course are to be determined by the simple test of what they actually knew, not by speculation as to what they had reason to know, or what would have aroused the suspicion of a reasonable person in their circumstances." *Hartford Accident*, 74 N.Y.2d at 162–163, 544 N.Y.S.2d at 578, 542 N.E.2d at 1095 (1989) (citation omitted). It would appear, therefore, that for purposes of holder in due course analysis, Section 8.3–304(7) implicitly supersedes that portion of the definition of "notice" contained in Article I of the Virginia U.C.C. which introduces a degree of objectivity to the concept of lack of notice. *See* Va.Code Ann. § 8.1–201(25)(c) (defining "notice" as "[F]rom all the facts and circumstances known to him at the time in question he has reason to know that it exists.").

■ Nowhere does the U.C.C. define the term "bad faith" used in Va.Code Ann. § 8.3–304(7). Good faith is defined as "honesty in fact in the conduct or transaction concerned." Va.Code Ann. § 8.1–201(19) (1965). To evidence bad faith, therefore, the purchaser of an instrument must have actual knowledge of such facts as would result in his taking the instrument dishonestly. *See Hartford Accident & Indemnity Co. v. American Express Co.*, 136 Misc.2d 62, 65, 518 N.Y.S.2d 93, 96 (1987) ("They must be facts, ignorance of which amounts to dishonesty."), *aff'd*, 143 A.D.2d 1074, 533 N.Y.S.2d 356 (1988); 74 N.Y.2d 153, 544 N.Y.S.2d 573, 542 N.E.2d 1090 (1989). Bad faith has been said to be "obviously something far more extreme than a failure to observe reasonable commercial standards or the standards of a reasonably prudent man. It 'is not mere carelessness. It is nothing less than guilty knowledge or willful ignorance.' " *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 452 F.Supp. 1108, 1119 (S.D.N.Y.1978), *quoting Manufacturers & Traders Trust Co. v. Sapowitch*, 296 N.Y. 226, 229, 72 N.E.2d 166, 168 (1947).

■ As with the test in Virginia for determining whether a holder had notice, the test for determining whether a holder took an instrument in good faith is a subjective one. *Lawton*, 231 Va. at 251, 343 S.E.2d at 337. It is determined by looking to the mind of the particular holder who asserts that he is a holder in due course, and not by focusing on what the state of mind of a reasonably prudent person should have been. *Id.*

■ Walde supported his motion for summary judgment with affidavit and deposition testimony wherein he stated that when he took the Notes on November 23, 1988, he had no knowledge of the Debtor's alleged alcohol or psychological problems, any court order restricting the Debtor's ability to contract, or any other facts that might make the Notes unenforceable. The Debtor contends that when Walde took the Notes from Swarek on November 23, 1988, Walde "knew or should have known" that the Debtor was incompetent on November 10, 1988, because of the Debtor's "intoxication, severe manic depression and physical disability." *Memorandum in Support of the Debtor's Opposition to Summary Judgment* at 6.

In his opposition to Walde's summary judgment motion, the Debtor presented af-

fidavit and deposition testimony to the effect that Walde had known the Debtor since the parties were teenagers; that the two had transacted business with one another; that the two patronized some of the same establishments where alcohol was served and where the Debtor was frequently intoxicated; that the Debtor was largely incapable of thinking rationally; that Walde told a witness that the Debtor is "really acting strange;" that a witness told Walde that the Debtor had been put on and taken off medication for depression and that the Debtor was "doing silly, stupid things"; and that the bank for which Walde served as chairman of the board and chief executive officer would not make the $1,700,000 loan to the Culbertsons and Swarek which was secured by the Notes.

In addition, the Debtor asserted in an affidavit attached to his motion to reconsider the summary judgment that "it was obvious to ... [Walde] that in 1988–89 I was in ill health and intoxicated most of the time," [3] and "Mr. Walde knew or should have known of my divorce proceeding and the orders restricting my ability to contract." Finally, with his motion for reconsideration, the Debtor offered identical affidavits of two bartenders who each stated that "I saw [the Debtor and Walde] together in the Guards from January 1, 1988, through December, 1988, not less than ten times.... [The Debtor] was intoxicated and acting strangely most of these times and Mr. Walde knew he was.... Mr. Walde knew Mr. Wills was a manic depressive who had stopped taking his medication and who was subject to divorce proceedings and court orders." [4]

Summary judgment procedure is properly regarded "not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, ...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). It has been said that summary judgment enables a court to "streamline the process for terminating frivolous claims and to concentrate its resources on meritorious litigation." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

Summary judgment is to be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). In determining whether this showing has been made, this Court must assess the evidence in the light most favorable to the party opposing the motion. *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir.1979). This Court's responsibility is not to resolve disputed issues of fact but to determine whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–159, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970).

---

**3.** Walde contends that this statement is hearsay in that the Debtor stated earlier in a deposition that he had no independent recollection of the period in question. Therefore, the Debtor's statement, according to Walde, could be based only on what the Debtor has been told by others who are not witnesses in this matter and should not be considered for purposes of summary judgment. Because the Debtor's statement constitutes mere speculation which cannot defeat a summary judgment motion, *see Ash v. United Parcel Serv., Inc.*, 800 F.2d 409, 411–412 (4th Cir.1986) ("[Unsupported] speculation is not sufficient to defeat a summary judgment motion."), it is not necessary to determine whether, under *Antonio v. Barnes*, 464 F.2d 584, 585 (4th Cir. 1972), or *Celotex Corp. v. Catrett*, 477 U.S. 317,

324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), such affidavit was "made on personal knowledge" and sets forth "such facts as would be admissible in evidence" as required by Fed.R. Civ.P. 56(e).

**4.** Because none of these three affidavits was presented to this Court prior to the hearing on the motion for summary judgment, they will not be considered. However, even if they were filed in a timely manner, they could not defeat a summary judgment motion because they are speculative and conclusory. *See Ash v. United Parcel Serv., Inc.*, 800 F.2d 409, 411–412 (4th Cir.1986) ("[Unsupported] speculation is not sufficient to defeat a summary judgment motion.").

A party opposing summary judgment has raised a genuine issue of material fact when "the record taken as a whole could ... lead a rational trier of fact to find for the non-moving party." *See Rosas v. Stone,* 923 F.2d 849 (4th Cir.1991), *citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."). If the evidence is not significantly probative, summary judgment may be granted. *Liberty Lobby,* 477 U.S. at 249–250, 106 S.Ct. at 2510–11, *citing First Nat'l Bank v. Cities Service Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968). "In essence, though, the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby,* 477 U.S. at 251–252, 106 S.Ct. at 2512.

The party moving for summary judgment has the burden of showing that no genuine issue as to a material fact exists. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. It has been held that where a maker of a note, opposing the holder's motion for summary judgment, asserts that the holder had knowledge of a claim or defense, the holder must show that he did not have knowledge. *First Int'l Bank of Israel v. L. Blankstein & Son, Inc.,* 59 N.Y.2d 436, 444, 465 N.Y. S.2d 888, 891, 452 N.E.2d 1216, 1220 (1983). Because this involves proof of a negative fact, the holder's burden is a slight one that will be satisfied by testimony of the holder that it had no knowledge. *Id.* The burden then shifts to the nonmoving party to show that there is a genuine issue of material fact. *Id.* Summary judgment should be rendered against a party who fails to make a showing sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322–323, 106 S.Ct. at 2552–53 (where non-moving party will bear burden of proof at trial on a dispositive issue, Rule 56 requires the nonmoving party to show that there is a genuine issue for trial to defeat motion for summary judgment).

Facts that are material in this matter relate to the issue of whether Walde, when he took the Notes on November 23, 1988, had knowledge of the Debtor's alleged legal incapacity to contract on November 10, 1988, or of the court order allegedly applicable to the Notes, or knowledge of such facts as would amount to Walde's taking the Notes in bad faith. The affidavits and deposition testimony offered by the Debtor in opposition to Walde's motion, viewed in a light most favorable to the Debtor, are devoid of any evidentiary facts which raise a triable issue as to whether Walde had such knowledge or acted in bad faith. Nothing put forth by the Debtor would allow a trier of fact to rationally infer that when Walde took the Notes, Walde knew that the Debtor was legally incompetent to contract when the Debtor executed the Notes on November 10, 1988, or that Walde was acting in bad faith. Furthermore, the Debtor failed to present any facts that Walde knew the terms of the court order when he took the Notes.[5] We fail to see how the facts presented by the Debtor, considered separately or collectively, would allow a rational trier of fact to conclude that Walde was acting with "guilty knowledge or willful ignorance." *Corporacion Venezolana,* 452 F.Supp. at 1119. What is important here is not Walde's possible knowledge of the Debtor's drinking, marital or psychological problems but rather Walde's knowledge of any defenses to the payment of the Notes, or knowledge of any facts which, if ignored, would amount to bad faith. Mere allegations of knowledge devoid of specific evidence showing that there is a genuine issue of material fact

---

**5.** Under the Virginia U.C.C., the filing of a public document does not constitute constructive notice to a person who would otherwise be a holder in due course. Va.Code Ann. § 8.3–304(5) (1965).

require this Court to grant summary judgment. Because no rational trier of fact could find for the Debtor and therefore no triable issue of fact exists with respect to whether Walde had notice of the Debtor's alleged defenses or acted in bad faith, we find that Walde is a holder in due course and takes free from all defenses asserted by the Debtor, including the defense of incapacity. *See* Va.Code Ann. § 8.3–302 (1965).

Although the United States Court of Appeals for the Fourth Circuit observed in *Magill v. Gulf & Western Indus., Inc.*, 736 F.2d 976, 979 (4th Cir.1984), that summary judgment is seldom granted when issues involve a party's state of mind or knowledge, this motion presents one of those cases where it is appropriate. Indeed, it is not uncommon for courts to grant summary judgment in suits to enforce negotiable instruments where the holder's knowledge of a claim or defense is in issue. *See, e.g., J & B Schoenfeld Fur Merchants, Inc. v. Kilbourne & Donohue, Inc.*, 704 F.Supp. 466, 470 (S.D.N.Y.1989); *Washington Trust Co. v. Fatone*, 104 R.I. 426, 244 A.2d 848, 853 (1968) ("A court should be cautious in granting a motion for summary judgment where state of mind is involved, ... and should be sure that the party opposing the motion has had a fair opportunity to use the discovery process to probe his opponent's mental state and to examine the facts his opponent has at hand. But if, after such an opportunity, the opposing party cannot point to anything tangible which will create a genuine issue of material fact, the motion should be granted.") (citation omitted); *Sundsvallsbanken v. Fondmetal, Inc.*, 624 F.Supp. 811, 817–818 (S.D.N.Y.1985) (where holder of note had

allegedly been notified before note's execution of suspicions of conversion, receipt of such information did not preclude summary judgment in his favor).

At the time Walde took the Notes, the Debtor had not been declared legally incompetent. Indeed, no court has ever declared the Debtor incompetent.[6] It is one thing for a purchaser of an instrument to have actual knowledge that the maker or drawer is, for example, a minor but quite another thing for the purchaser to have actual knowledge when he takes an instrument that the maker or drawer is legally incompetent due to intoxication or mental illness even though the maker or drawer has never been declared legally incompetent.

To allow a maker to automatically defeat a holder's summary judgment motion by the presentation of evidence of nothing more than the holder's possible knowledge of the maker's or drawer's drinking, psychological or marital problems would not only be contrary to the law but would subject innumerable transactions to a level of scrutiny that would have a chilling effect on the transferability of commercial paper, contrary to the general intent of the drafters of Article 3.[7] The Debtor's position, if adopted here, would require every purchaser of an instrument to ask himself whether he had ever observed the maker or drawer intoxicated or whether he had ever heard of rumors of the maker's or drawer's psychological or marital problems. By chilling the secondary market for instruments, the position advanced by the Debtor would effectively limit the ability of anyone suspected by a prospective purchaser of an instrument of having drinking, psychological or marital problems from issuing drafts

6. In 1988, at the request of the Debtor's wife who asserted that the Debtor was dissipating marital assets, the Arlington County Circuit Court appointed a conservator over the property, but not the person, of the Debtor. There was no finding by such court of legal incompetence on the part of the Debtor.

7. According to a recent decision of the New York Court of Appeals, "[The holder in due course doctrine] has as its objective encouraging and facilitating the ready transaction of negotiable instruments, central to our credit econo-

my; people can rely on the fact that negotiable instruments in the hands of good faith purchasers will be paid according to their tenor and intent and not paid otherwise. Holder in due course status advances that objective by providing that persons in that category take free of virtually all claims and defenses." *Hartford Accident,* 74 N.Y.2d at 162–163, 544 N.Y.S.2d at 578, 542 N.E.2d at 1092 (citation omitted); *see also Cohen v. Lincoln Savings Bank*, 275 N.Y. 399, 412, 10 N.E.2d 457, 465 (1937).

or promissory notes, even before the drawer or maker has been declared legally incompetent.

Because this Court finds that Walde is a holder in due course, the defense of intoxication does not defeat Walde's right to recover under the Notes. Under the Virginia U.C.C., a holder in due course takes free from all defenses except, among others, any incapacity that "renders the obligation of the [maker or drawer] a nullity." Va.Code Ann. § 8.3–305(2)(b) (1965). Incapacity resulting from intoxication does not render a contract void, merely voidable, in Virginia. *Taliaferro v. Emery*, 124 Va. 674, 678–679, 98 S.E. 627, 628 (1919). Comments to the Virginia U.C.C. provide that "[i]f under the local law the effect [of incapacity] is to render the obligation voidable ... the defense [of incapacity] is cut off [as to holders in due course]. Comment 5, Va.Code Ann. § 8.3–305 (1965).

Moreover, the existence of a court order does not defeat Walde's rights as a holder in due course. Nonparties may be bound by an injunction if they have actual knowledge of the injunction and are legally identified with the parties or are acting in concert with them. *United States v. McAndrew*, 480 F.Supp. 1189, 1194 (E.D.Va. 1979). The court order applicable to the Debtor is in the nature of an injunction. Because Walde was not party to that action and the Debtor offered no evidence that Walde had knowledge of such order, Walde should not be affected by such order.

■ Turning now to the proofs of claims filed by the Culbertsons and Swarek, the Debtor contends that on November 10, 1988, when he closed the transactions contemplated by the Purchase Agreement, he was so incapacitated due to intoxication and manic depression as to not possess sufficient mental capacity to understand the nature and consequences of his acts. The Culbertsons and Swarek contend that, after presenting all of his evidence, the Debtor has failed to prove by clear and convincing evidence that he was legally incompetent, and that his objections should be dismissed pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Bankruptcy Rule 7041(b).

Under Rule 41(b), this Court may dismiss the Debtor's case if, after weighing the evidence and resolving issues of fact and credibility, it determines that the Debtor has failed to carry the requisite burden of proof. *Taylor v. Combustion Engineering, Inc.*, 782 F.2d 525, 527 (5th Cir.1986). The Court must weigh the evidence and resolve issues of fact and credibility that are in dispute, as well as consider evidence that arises as a result of direct and cross-examination. *Lyncott Corp. v. Chemical Waste Management, Inc.*, 690 F.Supp. 1409, 1415 (E.D.Pa.1988). Furthermore, the Court is not required to examine the Debtor's testimony in the light most favorable to the Debtor, but rather to give the Debtor's testimony such weight as the court believes it is worth in light of the credibility of the witnesses. *Henry v. Moore–McCormack Lines, Inc.*, 134 F.Supp. 71, 72 (S.D.N.Y.1955).

■ The primary question presented here is whether the Debtor proved by clear and convincing evidence that on November 10, 1988, he was so incapacitated due to intoxication and manic depression as not to possess sufficient mental capacity to understand the nature and consequences of his acts. In Virginia, the law presumes that every adult who executes a contract is mentally competent to enter into such contract. *Chesapeake & Ohio Ry. Co. v. Mosby*, 93 Va. 93, 94, 24 S.E. 916, 916 (1896). A party may refute this presumption by clear and convincing evidence that such party was incapable of understanding the nature and consequences of his acts, or more exactly, whether such party's mental powers have become so far affected as to make him incapable of understanding the character of the transaction in question. *Lohman v. Sherwood*, 181 Va. 594, 607, 26 S.E.2d 74, 79–80 (1943). It is not necessary that the party have the ability to make a reasoned judgment concerning the agreement. *Drewry v. Drewry*, 8 Va.App. 460, 467, 383 S.E.2d 12, 15 (1989). It is critical that, at the time of execution of the instrument, a party have sufficient mental capac-

ity to understand the nature of the transaction and assent to its provisions. *Id.* at 468, 383 S.E.2d at 15. Although the party's capacity before or after the execution of the agreement is relevant in determining competency, the dispositive factor is the party's mental capacity to understand the nature of the agreement and the consequences of such party's act at the time the agreement is executed. *Price's Ex'r v. Barham*, 147 Va. 478, 481, 137 S.E. 511, 512 (1927). "[A] person may have great weakness of mind yet may possess sufficient mental capacity to understand the nature of the transaction and to assent to the provisions of the challenged instrument." *Brown v. Resort Devs.*, 238 Va. 527, 531, 385 S.E.2d 575, 578 (1989).

On October 17 and 18, the Debtor presented evidence in support of his affirmative defense of incapacity to contract. The Debtor's evidence included testimony by his son, John, that on November 10, John saw his father in the middle of the day intoxicated and asleep in front of the fireplace; that his father drank alcohol until about 5 p.m.; that it was apparently difficult for his father to put his pants on; that John helped his father climb some stairs; that John walked his father out to his father's car where his father tried to get in but couldn't because John had taken his keys; that John left his father next to his car; and that John was not present at the time his father executed the closing documents. Other evidence that was introduced by the Debtor included testimony of Doyle Culbertson that Doyle and the Swareks arrived at the Debtor's residence about 5:30 p.m. on November 10; that they observed the Debtor sign the closing documents that evening; and that at that time the Debtor appeared to be neither intoxicated nor acting irrationally.

The Debtor attempted to introduce the deposition of Dr. Moscarillo, the Debtor's psychiatrist. The deposition, if admitted [8], would have established that Dr. Moscarillo, commencing in 1970, treated the Debtor for a psychotic illness and continued to treat him sporadically during the 1970s and 1980s; that in 1988, Dr. Moscarillo saw the Debtor four times, April 28, August 26, August 31 and September 7, more than two months prior to the November 10, 1988 closing; that Dr. Moscarillo diagnosed the Debtor as suffering from a manic depressive illness; and that a person suffering from such an ailment can be logical and clear at times.

Neither the Debtor's son, John, nor Dr. Moscarillo was present at the November 10 closing. Although their testimony is certainly relevant to the issue of the Debtor's capacity, this Court does not give their testimony as much weight as the testimony of Doyle Culbertson and Swarek who testified that when they observed the Debtor sign the closing documents on the evening of November 10, 1988, the Debtor was neither intoxicated nor acting irrationally. We find Culbertson's and Swarek's testimony to be both credible and persuasive. In addition, it is the law in Virginia that the testimony of witnesses who are present when an instrument is executed is entitled to greater weight than the testimony of those witnesses not present. *See Brown*, 238 Va. at 529, 385 S.E.2d at 576 (1989). Based on all of the evidence presented by the Debtor, we find that he has not demonstrated by clear and convincing evidence

---

**8.** At the close of the Debtor's case, this Court granted the Debtor's motion to admit Dr. Moscarillo's deposition, in lieu of his live testimony, because Moscarillo failed to appear to testify despite being subpoenaed. The Culbertsons and Swarek filed a motion to strike Dr. Moscarillo's deposition on the ground that Dr. Moscarillo was served by an attorney who was assisting the Debtor's counsel and that such service was in violation of Rule 45(c) of the Federal Rules of Civil Procedure (which provides that a subpoena may not be served by a party) and Local Bankruptcy Rule 110(c) (which provides that a subpoena may not be served by a party or a person otherwise interested in the proceeding). The Culbertsons and Swarek argued that the attorney who served the subpoena was an agent of the Debtor and was interested in the proceeding. The Culbertsons and Swarek also contended that the subpoena was defective on its face in that it required Dr. Moscarillo to appear at 9:30 a.m. on October 18 and that he was not served until 2:50 p.m. on October 18. This Court granted the motion to strike. *See In re Evanishyn*, 1 F.R.D. 202, 203 (S.D.N.Y.1939) (an attorney stands in the same relationship as a party for purposes of serving a subpoena).

that he was incapable of understanding the nature and consequences of his acts.

The Debtor further contends that court orders issued on August 26, 1988, and on November 10, 1988, by the Arlington County Circuit Court in connection with divorce proceedings between the Debtor and his wife, allow the Debtor to rescind the sale of the properties to the Debtor. As previously observed, nonparties may be bound if they have *actual* knowledge of the injunction and are legally identified with the parties or are acting in concert with them. *United States v. McAndrew,* 480 F.Supp. 1189, 1194 (E.D.Va.1979). Doyle Culbertson testified that on November 9, 1988, John Wills, the Debtor's son, mentioned the existence of court orders but did not give any details, despite Culbertson's request for specific information. John Wills' testimony did not contradict Culbertson's recollection. The Debtor offered no evidence that the Culbertsons and Swarek had knowledge of the court orders or acted in concert with the Debtor or his wife. Therefore, this Court finds that they had insufficient knowledge as to affect their rights.

For the foregoing reasons, we grant Walde summary judgment and grant the Culbertsons and Swarek their motion to dismiss. An appropriate order will be entered.