### Richmond.

## CHESAPEAKE & OHIO RAILWAY CO. V. MOSBY.

#### APRIL 16, 1896.

1. CONTRACTS—*Capacity of Parties—Weakness of Mind—Case in Judgment.*—The law presumes that every one is capable to contract, and exemption from liability for want of such capacity must be strictly established. Mere weakness of mind, lack of skill, or immaturity of judgment in one who has attained full age, are not of themselves sufficient to invalidate a contract, though taken in connection with other evidence, showing a lack of consent and an intention of the other party to overreach, they may have that effect. The case in judgment falls within the general rule. The evidence does not show a lack of legal capacity in the appellee to contract.

2. CONTRACTS—*Inequality of Parties in Wealth and Influence—Compromise.*—Mere inequality in the wealth, power, and influence of parties to contracts cannot affect the validity of such contracts. And, where a compromise of a disputed liability for personal injuries has been deliberately entered into between the parties, it should not be set aside except upon the most satisfactory proof.

Appeal from a decree of the Chancery Court of the city of Richmond, pronounced May 8, 1894, in a suit in chancery, wherein the appellee was the complainant, and the appellant was the defendant.

*Reversed.*

The opinion states the case.

*Christian & Christian, Wm. J. Robertson,* and *Henry Taylor, Jr.,* for the appellant.

*Robert Stiles* and *Wm. Ellyson,* for the appellee.

HARRISON, J., delivered the opinion of the court.

Pending his action for damages, the plaintiff, who was conductor of a freight train on the Chesapeake & Ohio Railway, and while thus engaged was seriously injured in a collision, has instituted this suit in chancery to set aside a release of all claim for damages suffered by him in that accident, on the ground that, at the time of executing said release, he was mentally incompetent, and that the defendant company took advantage of his incapacity to procure the release. The case was heard by the chancellor without the intervention of a jury, upon depositions only; and the petition for appeal contains no other assignment of error but that the chancery court erred in coming to the conclusion, upon the evidence, that the plaintiff was entitled to the relief asked in his bill.

"The law presumes that there is in everyone capacity to contract, and accordingly, where exemption from liability to fulfill an engagement is claimed by reason of the want of such capacity, this fact must be strictly established on the part of him who claims the exemption. Moreover, it is only in certain prescribed cases that this protection can be claimed; and therefore, weakness of mind short of insanity; or immaturity of reason in one who has attained full age; or the mere absence of experience or skill upon the subject of the particular contract, affords *per se,* no ground for relief at law or in equity." 1 Chitty on Contracts 186. The same author from whom this general rule has been quoted, states its qualifications thus: "Although weakness of intellect, short of insanity, in one of the contracting parties is no ground *per se* for invalidating a contract; it may have that effect, if additional facts, betraying an intention to overreach, can be proved." 2 Chitty, p. 1050.

This rule with its qualification is substantially adopted by this Court in *Greer* v. *Greers,* 9 Gratt. 330. It was there said that although the person may labor under no legal incapacity to do a valid act or make a contract, yet if the

whole transaction taken together with all the facts, mental weakness being one of them, showed that consent, the very essence of the act, was wanting, it would be void. Where a legal capacity is shown to exist; that the party had sufficient understanding to clearly comprehend; that he consented freely to the special matter about which he was engaged, and no fraud or undue influence is shown to have been used to bring about the result, the validity of the act cannot be impeached, however unreasonable or imprudent it may seem to others. It is not the propriety or impropriety of the act, but the capacity to do the act freely that must control the judgment of the court.

These general principles are entirely applicable, and are all that need be invoked in considering the case before us.

The plaintiff was very seriously injured in a collision between two trains on the road of the defendant, he being conductor on one of the said trains. In addition to a broken arm he had a injury to his head, and, as a result of the latter, the use of the other arm was for sometime greatly impaired, besides being otherwise bruised about the body. He was confined to the house about one month, and continued to suffer more or less for about twelve months. It satisfactorily appears from the evidence that about two months after the accident, the plaintiff went to the office of the superintendent of the defendant company, and agreed upon a settlement of his claim for damages against the company. This agreement was that the plaintiff should receive for six months $75 per month, and if, after the expiration of that time, he did not feel able to resume his position as freight conductor, the defendant would furnish him less laborious labor until such time as he did feel able to resume his former position. About two months after this agreement was made the plaintiff went to the office of the superintendent and collected three hundred dollars on account of this settlement and gave a receipt therefor, which fully describes

the accident, and admits that his injuries were received under circumstances exonerating the company from responsibility.

On the 22d of September, 1891, the plaintiff again went to the office of the superintendent and collected the remaining $150 due under the agreement, and gave a final voucher therefor, which is a more elaborate paper than the first, reciting that the injuries were received under circumstances completely exonerating the company from liability, and that the amount was received in full compromise, satisfaction, and discharge of all his claims or causes of action, and particularly of all claims or causes of action arising out of personal injuries received by him in the accident as to which the settlement had been made.

The plaintiff admits the genuineness of his signature to both these papers, but says that he has no recollection of signing any but the last one for $150.00, and further insists that both papers should be declared null and void because at the time of their execution he was mentally incompetent, and that the defendant took advantage of his incapacity to procure them.

The evidence wholly fails to sustain this contention. On the contrary, it shows that the plaintiff had an intelligent comprehension of his rights in the premises. The first receipt was given four months, and the other six months, after the accident, when the plaintiff had been going about for months.

The plaintiff says that he suffered a long time with his head and could not sleep well, and that he was neither physically nor mentally able to attend to business for twelve months after the accident. He does not deny the statements of the superintendent as to the transaction, but merely says that he does not remember the transactions detailed by that officer. He admits that he could read, and that he had every opportunity to read the voucher for

$150.00, which he remembers signing; says that he glanced at it and saw there was something in it about accident, and further says that no one forced him to sign the voucher.

The father of the plaintiff and two other witnesses express the opinion that the plaintiff was not competent to attend to business, but they point to no sufficient facts or circumstances to sustain their opinion. The father says that he urged the plaintiff to have no dealing with the defendant until he had advised with counsel, and then to follow the advice of his counsel. It might fairly be presumed that if the plaintiff had sufficient mental capacity to discuss his case with counsel, and to follow his advice, he was not so bereft of reason as to render him incapable of understanding the proposition submitted to him by the defendant. On the other hand, the evidence of the defendant establishes beyond controversy that the plaintiff, at the times of these transactions, was laboring under no legal incapacity to contract, but was fully competent to make a valid and binding agreement.

Without commenting upon all the evidence, it is sufficient to refer to the testimony of Dr. Hugh M. Taylor, a physician of skill and high standing, employed by the defendant, and who had charge of the plaintiff's case from the time of the accident until he no longer needed his services. This witness says that during the time plaintiff was confined to his house he saw him every day; that after he got out he came to his office once or twice a week for a long time, and later on once a week; that he saw him frequently for eight or ten months. He expresses the emphatic and unqualified opinion that at no time was there any defect in the plaintiff's mental capacity, and at no time was there any difficulty in his comprehending such a business transaction as the settlement of a claim for damages on account of injuries received by him in this collision. He says that, during his frequent interviews with the plaintiff, the evidence of intelligence

and correct cerebral action were too vividly impressed to make it probable that his opinion in regard to the matter could be changed by the testimony of others.

The opinion of this witness is entitled to the highest consideration. He is not only a skilled expert, but has had the fullest opportunity afforded by personal intercourse to form a correct judgment.

The plaintiff insists that the consideration for the settlement made by him was totally inadequate, and that this circumstance, taken in connection with the "*glaring inequality*" between the contracting parties in this case, superadded to "*his shattered and enfeebled condition,*" is sufficient to justify the court in releasing him from the contract he has made.

If the plaintiff was, at the time he signed the release, competent to appreciate and understand its nature and effect, and we have seen that he was, and no unfair methods were used to induce him to sign it, then it makes no difference whether the settlement was, on his part, wise or unwise.

So far as this transaction is disclosed by the record it is absolutely free from the suspicion of fraud, advantage; or undue influence on the part of the defendant. The plaintiff was not sought by the defendant and urged to make a settlement. On the contrary, he voluntarily sought the defendant months after the accident, when he had been going about and conferring with friends, and discussing the propriety of bringing a suit. In his first interview no settlement was closed. In each interview with the defendant he claimed to have a good legal claim for damages, and the defendant uniformly denied all liability to him on account of the accident. In the last interview he again expressed the opinion that he had a good claim, and that his father had consulted a lawyer about his case. The superintendent then offered, if he would return the money already received, to surrender the first voucher; and he could bring suit. This

he declined, saying he did not intend to bring suit, that he preferred to carry out the contract as already agreed upon.

There is nothing in the record upon which to base the contention that the consideration was inadequate. For aught that appears to the contrary it may have been a wise contract for the plaintiff to make. There is no evidence showing that the company was under any liability to the plaintiff, and none can be inferred, for in a suit by an employee against a railroad company the mere proof of the accident raises no presumption of negligence against the company.

The plaintiff has no just ground to complain of the great inequalty between himself and the defendant in point of wealth, power, and influence. There is no evidence that this superior power and influence of the defendant was exerted to the disadvantage of the plaintiff in any way. If the disparity here complained of was a sufficient ground for setting aside the contract between the parties, then a railroad company could never settle disputed claims with its employees—a practice that should be encouraged rather than discouraged.

The charge in the amended bill that the contract, if otherwise legal, should be set aside for uncertainty, and because it has not been carried out by the defendant, is also without merit. The contract proven is clear and simple, and the evidence shows that it has been carried out in its letter and spirit. The money consideration has been paid in full, and it further appears that the plaintiff, at his own request, was assigned to the position of baggage man on the train, the company removing another employee to make the place for him. This position the plaintiff did not keep but a few days, and gave it up because the jar of the train hurt his head. He then declined the position of ticket agent, which was offered him by the defendant, and at his own request was appointed check clerk at a depot, another employee being removed to give him this place.

He kept this position but a short time, and gave it up voluntarily, without assigning any reason therefor, and soon thereafter brought his suit for damages.

The law favors the compromise and settlement of disputed claims. It is to the interest of all that there should be an end of litigation, and a settlement deliberately sought, as this was by the plaintiff, ought not to be set aside except upon the most satisfactory evidence.

For the foregoing reasons the decree complained of must be reversed and set aside, and this court will enter such decree as the court below ought to have entered.

*Reversed.*