# Salem

## SELDIA LEE BOSWORTH DREWRY

v.

## JOHN THOMAS DREWRY

No. 0558-88-3

Decided July 25, 1989

COUNSEL

Gary L. Lumsden, for appellant.

William L. Hartwell, III (Hartwell & Hagan, on brief), for appellee.

OPINION

COLEMAN, J.—In this divorce case the trial court upheld the validity of a property settlement agreement and incorporated it into the final divorce decree entered April 8, 1987. On appeal, Seldia Drewry contends that the trial court erred in finding the agreement valid because (1) the medical evidence proved without question that she was mentally incompetent to contract with her husband, (2) the agreement was procured by fraud, and (3) the agreement was unconscionable. We find no error in the trial court's rulings and affirm the decision.

▆▆ Mrs. Drewry had the burden at trial to prove by clear and convincing evidence the grounds alleged to void or rescind the agreement. *See Winn v. Aleda Constr. Co.*, 227 Va. 304, 308, 315 S.E.2d 193, 195 (1984); *Gill v. Gill*, 219 Va. 1101, 1106, 254 S.E.2d 122, 125 (1979). On appeal we review the evidence in the light most favorable to the prevailing party and determine whether that evidence established as a matter of law any of the grounds relied upon to vitiate the agreement and decree. *Derby v. Derby*, 8 Va. App. 19, 26, 378 S.E.2d 74, 77 (1989).

John and Seldia Drewry were married in December 1960. She was seventeen at the time. She is now forty-four. She has worked intermittently as a part-time secretary at the family owned auto parts store. In late February, 1987, she informed her husband that she was unhappy in the marriage and wanted a divorce. They discussed entering into a separation agreement which would divide the marital property and settle spousal support. Mr. Drewry testified that after his wife informed him she wanted a divorce they sat at the kitchen table and negotiated the terms of the property settlement agreement. Mr. Drewry consulted an attorney to have the property settlement agreement reduced to writing. The attorney who drew up the agreement testified that after Mr. Drewry consulted him about drafting the agreement, he met with both and

informed them that if they had reached a settlement, he could draft a contract, but he could not represent either in negotiating the agreement or in the divorce proceeding. Mrs. Drewry signed the agreement in the attorney's office on April 8, 1987.

The terms of the agreement provided that Mrs. Drewry would convey to Mr. Drewry her rights in the marital home and the family auto business. She waived her right to spousal support.[1] In exchange, the husband agreed to pay her $25,000, with $4,000 due immediately, $18,500 due within 30 days, and the $2,500 balance due at the time of the final divorce. Mr. Drewry had paid to her all but the last $2,500 at the time of the evidentiary hearing.

The only evidence in the record regarding the value of the marital property was the testimony of Mr. Drewry, which was based upon real estate tax assessments, that the marital home had a value of $29,800 and the auto store had a value of $53,000, subject to a $44,000 mortgage, leaving a net value of $9,000. The parties agreed to retain their individual automobiles, their individual checking and savings accounts, and their personal belongings. Mr. Drewry testified that they informally agreed that Mrs. Drewry could take their joint personal household property. Within a month after the agreement was executed Mr. Drewry sold an unimproved lot from the auto business for $35,000. Mrs. Drewry introduced no evidence concerning the value of the marital property. She relies upon the sale of the unimproved lot as proof that the value of the marital property exceeded Mr. Drewry's valuations. Mr. Drewry testified that he was first approached about the sale of the lot two weeks after the agreement was signed, that he had no notice of the potential sale, and that the purchaser had a special need which enabled Drewry to obtain a price greater than fair market value. Mrs. Drewry presented no evidence to the contrary about the sale.

Mrs. Drewry testified that she has no memory of negotiating the agreement. She stated that she signed it only because she had complete trust in her husband's handling of their financial affairs.

---

[1] This case was governed by the provisions of Code § 20-107.1 prior to the 1988 amendment, which repealed the limitation upon granting permanent maintenance and support from a spouse who had fault grounds for divorce, except under the provisions of Code § 20-91(1).

Mrs. Drewry sought to have the agreement set aside on the grounds that she lacked mental capacity to contract and was coerced by her husband into executing the agreement. She contends that she lacked independent counsel at the time of the agreement, that the husband failed to make full disclosure to her of the value of the auto business and marital home, and that the husband took unfair advantage of her mental illness in order to manipulate her into signing an unconscionable separation agreement.

Mrs. Drewry had been receiving psychological counseling since June 1986 for depression caused by unhappiness in the marriage. Her emotional condition worsened and she was hospitalized for depression from February 1, 1987, until March 2, 1987, during which time she came under the care of Dr. G. W. Luedke, a psychiatrist. Dr. Luedke released her from the hospital so she could travel to Florida to stay with her brother's family, apparently as part of her treatment. However, when she returned to Virginia she was again hospitalized from March 16 through 23, 1987, due to a psychological breakdown. After her release, Dr. Luedke saw her as an outpatient. Dr. Luedke last saw her on April 7, 1987, the day before she and her husband signed the separation agreement. Dr. Luedke testified by deposition that Mrs. Drewry suffered from severe depression due to her marital problems and that in his opinion she was "totally incompetent [due to her illness] to reason through any important legal document" on the day she signed the agreement.

The trial court ruled that Mrs. Drewry did not prove by clear and convincing evidence that she lacked mental capacity to contract or that her husband coerced her into executing the agreement. In addition to Dr. Luedke, several witnesses testified about Mrs. Drewry's condition and her ability to conduct her business affairs at or about the time she executed the property settlement agreement. The attorney who drafted the agreement testified that, although he was aware that Mrs. Drewry had been hospitalized for psychological problems, he observed nothing unusual about her demeanor when she appeared to execute the agreement. The attorney testified that she appeared to understand the terms of the agreement and the nature and character of the transaction. Furthermore, based upon his limited knowledge of the facts, he was not aware that the terms of the agreement were unfair.

Although Mrs. Drewry testified that she did not remember negotiating or executing the agreement, Mr. Drewry recounted the process in detail and testified that she actively negotiated the details of the agreement and appeared fully aware of and conversant with the terms of the agreement. He also testified that he initially offered $21,000 as a cash settlement in exchange for her interest in the property and for her waiver of any claim for spousal support, but she requested $1,000 for each of the 26 years of marriage. They settled upon $25,000 and he instructed the attorney to draft the agreement. He denied pressuring her into entering or executing the agreement.

One of Mrs. Drewry's sons, called as a witness on her behalf, testified that in his view his mother was "basically sound." The trial court also found that Mrs. Drewry's mother implicitly considered her daughter competent to execute the separation agreement since she drove her daughter to the attorney's office for the purpose of signing the agreement. Based on testimony of the foregoing witnesses, the trial court ruled that Mrs. Drewry was not incompetent to contract, that she had failed to prove constructive fraud and had failed to prove that the separation agreement was unconscionable.

■ In Virginia, "marital property settlements entered into by competent parties upon valid consideration for lawful purposes are favored in the law and such will be enforced unless their illegality is clear and certain." *Parra v. Parra*, 1 Va. App. 118, 128, 336 S.E.2d 157, 162 (1985) (quoting *Cooley v. Cooley*, 220 Va. 749, 752, 263 S.E.2d 49, 52 (1980)). Code § 20-109.1 provides that a court in its discretion may incorporate by reference into its final divorce decree "any valid agreement between the parties."

We first address Mrs. Drewry's claim that the agreement was invalid because she was not mentally competent to enter into a legally binding agreement. Mrs. Drewry contends that the testimony of Dr. G. W. Luedke, her treating psychiatrist, unequivocally established that she was unable to comprehend the nature and consequences of her actions when she signed the agreement. She argues that the trial court erred by not giving greater weight to her psychiatrist's testimony and opinion than to the testimony of the lay witnesses. She argues that a psychiatrist is better able to render a knowledgeable and objective opinion on mental competence. She notes that Dr. Luedke's medical opinion is further sup-

ported by that of Dr. J. S. Strosnieder, Mrs. Drewry's clinical psychologist, who treated her prior to Dr. Luedke and made the psychiatric referral.

The law presumes that every adult party who executes an agreement is mentally competent to enter into a contract. *Chesapeake & Ohio Ry. Co. v. Mosby*, 93 Va. 93, 94, 24 S.E. 916, 916 (1896). A party may rebut that presumption by proof that when the person executed the agreement he or she lacked the capacity to understand the nature and consequences of the transaction. *Lohman v. Sherwood*, 181 Va. 594, 607, 26 S.E.2d 74, 79-80 (1943). In order to be competent to enter into a legally binding obligation, a party is not required to exercise good judgment or to make wise decisions so long as he or she understands the nature and character of the agreement and consequences of entering into it. Thus, "weakness of mind short of insanity; or immaturity of reason in one who has obtained full age; or the mere absence of experience or skill upon the subject of the particular contract affords *per se*, no ground for relief at law or in equity." *Mosby*, 93 Va. at 94, 24 S.E. at 916. The party's capacity or condition before and after executing the agreement is relevant evidence to determine competency, but the dispositive question is the individual's mental capacity to understand the nature of the agreement and the consequences of his or her act at the time the agreement is executed. *Price's Ex'r v. Barham*, 147 Va. 478, 481, 137 S.E. 511, 512 (1927). The party must have "sufficient mental capacity to understand the nature of and effect of the transaction . . . ." *Id.* at 482, 137 S.E. at 512. The resolution of conflicting evidence bearing on an individual's mental capacity is a factual determination to be made by the trial court, *Waddy v. Grimes*, 154 Va. 615, 641, 153 S.E. 807, 815 (1930), and it will not be disturbed on appeal, unless plainly wrong or without evidence to support it. *Pommerenke v. Pommerenke*, 7 Va. App. 241, 244, 372 S.E.2d 630, 631 (1988).

Evidence regarding a person's mental capacity usually consists of testimony from lay witnesses acquainted with the person, opinions of doctors or psychiatrists who have treated or examined the party, and testimony of witnesses who observed the person negotiate or sign the contract. A doctor's or psychiatrist's opinion normally should be accorded great weight, particularly where the physician is not appearing solely as a consultant to the litigation,

but has been treating the individual for a condition which bears upon the issue of legal competency. *Barham*, 147 Va. at 481-82, 137 S.E. at 512. Testimony from witnesses who have known an individual and who have observed the person negotiate or execute the agreement also is generally entitled to great weight. Finally, persons familiar with an individual's demeanor are able to provide meaningful evidence concerning the person's mental condition and any observable changes. *Id.*

Dr. Luedke, the wife's psychiatrist, testified by deposition that Mrs. Drewry suffered from a major depressive disorder. In his opinion she was "totally incompetent to reason through any important legal document" due to her mental disorder on the day she signed the agreement. On the other hand, the attorney employed by Mr. Drewry to draft the agreement, and who knew of Mrs. Drewry's hospitalization, testified that he observed nothing from her demeanor which caused him to question her capacity to contract or whether she understood the terms and nature of the agreement. Mr. Drewry, although admittedly having an interest in the outcome of the litigation, testified that while she may have been depressed he observed nothing unusual about his wife's behavior to raise any question about her competency. More importantly, several lay witnesses who had seen Mrs. Drewry shortly before and after she signed the contract testified about her condition. Jimmy Drewry, the parties' son and a reluctant witness, and his girlfriend, Carol Purdue, testified that they observed nothing about Mrs. Drewry's behavior which caused them to question her mental competency. The trial court found that the view expressed by Mrs. Drewry's mother, Evelyn Bosworth, that she felt her daughter was "unbalanced," was inconsistent with the mother's conduct in driving her daughter to the attorney's office for the purpose of executing the separation agreement. Also, the trial court noted that, because Dr. Leudke's opinion was based in part on fabricated and exaggerated information from Mrs. Drewry, it was not a totally reliable statement of her mental condition and was not entitled to great weight.

■ The law does not require that one have the ability to make a reasoned judgment concerning an agreement but only that he or she understand the nature and consequences of his acts. *Sherwood*, 181 Va. at 607, 26 S.E.2d at 79-80 ("Courts do not undertake to measure the size of peoples' understanding or capaci-

ties"). Dr. Luedke testified that Mrs. Drewry lacked the ability to "reason through any important legal document" due to the severity of her depression. He did not address whether she comprehended the nature and character of her agreement and the consequences of executing a legal document. Severe mental depression does not of itself render a person legally incompetent. *See DiPietro v. DiPietro*, 10 Ohio App. 3d 44, 460 N.E.2d 657 (1983). If such were the case few separation agreements would be beyond challenge. The law will not invalidate a contract because it is ill-reasoned or ill-advised. Even if Dr. Leudke's testimony were accepted, it did not prove that Mrs. Drewry was incompetent to contract. We cannot say that the trial court erred in holding that the evidence failed to establish clearly and convincingly that Mrs. Drewry was mentally incompetent to contract. The judgment was not plainly wrong nor was it unsupported by the evidence. *See Grimes*, 154 Va. at 640-41, 153 S.E. at 815.

We next consider Mrs. Drewry's contention that the separation agreement should have been set aside on the grounds of fraud. Constructive fraud is a "[b]reach of legal or equitable duty which, irrespective of moral guilt, is declared by law to be fraudulent because of its tendency to deceive others and violate confidence." *Wells v. Weston*, 229 Va. 72, 77, 326 S.E.2d 672, 675-76 (1985). Mrs. Drewry asserts that, even if the evidence failed to prove her mentally incompetent to contract, the psychiatric evidence established that, because of her depression and mental state, Mr. Drewry was able to exploit their confidential relationship of trust. Therefore, she contends he was guilty of constructive fraud. We disagree.

The duty by which conduct is measured to determine fraud is established by the relationship and circumstances which exist between parties. *See Blum v. Blum*, 59 Md. App. 584, ____, 477 A.2d 289, 294 (1984). *See generally*, H. Clark, 2 *The Law of Domestic Relations in the United States* § 19.2 (2d ed. 1987). In *Barnes v. Barnes*, 231 Va. 39, 340 S.E.2d 803 (1986), the Supreme Court held that a husband and wife who have separated, employed independent counsel, and are negotiating a property settlement agreement, stand at arms length to one another in their negotiations. *Id.* at 42, 340 S.E.2d at 804. The fiduciary relationship which once existed between them has ended. *Id.* In the Drewrys' situation the trial court did not find that a fiduciary or

confidential relationship existed between them and imposed no duty of trust upon the husband to deal with his estranged wife with the highest duty to protect her financial interest. Thus, we must first consider whether a confidential trust relationship continued to exist between the Drewrys. Such determination depends upon the facts of each particular case. *Blum*, 59 Md. App. at ____, 477 A.2d at 294.

Mrs. Drewry had announced to her husband two weeks before they negotiated the agreement that she wanted a divorce and desired to settle their property interests. Although she did not employ independent legal counsel, Mr. Drewry did not prevent or discourage her from doing so. Clearly, she expressed a desire to end the marital relationship upon which the duty of trust was founded. She initiated and actively participated in negotiations to settle their property rights. She knew that her husband had consulted a lawyer and she met at the lawyer's office to sign the agreement to expedite the divorce before she left for Florida.

Generally, when spouses separate with the intention to divorce and propose to divide or settle their property interests, they have assumed adversarial roles and no longer occupy a position of trust. *See Avriett v. Avriett*, 88 N.C. App. 506, 508, 363 S.E.2d 875, 877, *aff'd*, 322 N.C. 468, 368 S.E.2d 377 (1988); *see also Jeffries v. Jeffries*, 434 N.W.2d 585, 587 (S.D. 1988). Mrs. Drewry contends, however, that because of her mental and emotional state we should disregard her actions in announcing a desire for divorce and should require her husband to deal with her in a trust relationship, imposing upon him the duty to protect her best interest. While the wife's emotional condition is, indeed, a factor which the trial court must consider in determining whether Mr. Drewry obtained the contract through fraud, her emotional condition alone did not give rise to a fiduciary relationship between the estranged spouses. *Barham*, 147 Va. at 482, 137 S.E. at 512; *Derby*, 8 Va. App. at 27, 378 S.E.2d at 78. The trial court did not err in failing to impose upon Mr. Drewry a duty of trust and in holding that the parties could negotiate a contract at arms length. Therefore, since Mr. Drewry owed her no duty of trust in negotiating the property settlement agreement, to prevail her evidence must clearly prove fraud or that the agreement is unconscionable.

"[T]o establish constructive fraud one must prove the following by clear, cogent, and convincing evidence: that there was a

*material false representation*, that the hearer believed it to be true, that it was meant to be acted on, that it was acted on, and that damage was sustained." *Nationwide Ins. Co. v. Patterson*, 229 Va. 627, 629, 331 S.E.2d 490, 492 (1985) (emphasis added). For constructive fraud to exist, the party seeking to avoid a contract need not show that there was an actual "intent to deceive" by the other party, but it is necessary to prove that there has been a material misrepresentation. *See Moore v. Gregory*, 146 Va. 504, 523, 131 S.E. 692, 697 (1925). The trial court specifically found that the husband had made no statements nor had he acted in a manner which would constitute misrepresentation or concealment of facts to his wife. Mrs. Drewry does not allege any such statements or actions. Without a showing that the husband in some way misrepresented or concealed material facts which affected the terms of the agreement, there is no evidence to support a finding of constructive fraud. *Derby*, 8 Va. App. at 28, 378 S.E.2d at 78.

Mrs. Drewry contends, however, that constructive fraud should be inferred from the circumstances surrounding the negotiation and signing of the agreement and from the sale of the unimproved lot. She also contends that the medical evidence establishing a mental impairment, when coupled with lack of counsel and an inadequate consideration received from the agreement, shows the contract was procured through constructive fraud. *See Payne v. Simmons*, 232 Va. 379, 350 S.E.2d 637 (1986). While these factors are indeed relevant in determining constructive fraud, they are not relevant to show the effect a misrepresentation or concealment might have had on a party to the contract. *Patterson*, 229 Va. at 629, 331 S.E.2d at 492.

Mrs. Drewry contends that her husband misrepresented to her the value of their real estate. To establish a misrepresentation she points to the fact that he sold an unimproved lot from the auto business for $35,000. There is no evidence to establish that Mr. Drewry misrepresented any fact to Mrs. Drewry. Assuming he had a duty to disclose a potential sale, the evidence fails to disclose that Mr. Drewry knew those facts. The parties mutually agreed to use and accept the real estate tax assessments to value their marital property for purposes of the property settlement agreement. That evidence is the only proof presented to date of the property values. No evidence contradicts Mr. Drewry's testimony that he had no knowledge at the time of the agreement that

a prospective purchaser existed who was willing to pay a premium price for an unimproved portion of the marital property. Moreover, according to the evidence, the sale did not reflect the property's fair market value. Mrs. Drewry presented no evidence or appraisal contradicting the values which they mutually agreed upon. We will not assume that the valuation which they placed on the property was unfair. Mrs. Drewry had the opportunity to present evidence contradicting the real estate tax valuation or establishing that her husband knew of the subsequent sale, but she was unable or failed to do either. *See Bowers v. Bowers*, 4 Va. App. 610, 359 S.E.2d 546 (1987). We will not presume an inadequacy of consideration for her bargain when she has failed to introduce evidence to that effect. *See Derby*, 8 Va. App. at 29, 378 S.E.2d at 79. There is no evidence of misrepresentation or concealment by Mr. Drewry in dealing with his wife, and, therefore, there can be no finding of constructive fraud.

■ Finally, we consider whether the property settlement agreement was unconscionable.

Fraud is generally determined by reviewing the conduct of the parties in relation to their legal and equitable duties to one another; unconscionability is more concerned with the intrinsic fairness of the terms of the agreement in relation to all attendant circumstances, including the relationship and duties between the parties. A party may be free of fraud but guilty of overreaching or oppressive conduct in securing the agreement which is so patently unfair that courts of equity may refuse to enforce it.

*Id.* at 28, 378 S.E.2d at 78. The wife contends that the husband took advantage of her mental impairment and her lack of independent counsel which, when combined with his overreaching, resulted in an unconscionable agreement containing an inadequate sum for her interest in the property and for her waiver of spousal support.

■ When a court considers whether a contract is unconscionable, adequacy of price or quality of value transferred in the contract is of initial concern. If a "gross disparity in the value exchanged" exists then the court should consider "whether oppressive influences affected the agreement to the extent that the process was unfair and the terms of the resulting agreement un-

conscionable." *Id.* at 28, 378 S.E.2d at 79. Here the trial court specifically found that the agreement was not unfair. The record shows that Mrs. Drewry was to receive in exchange for her interest in marital property having a net value of $38,500 and for any potential claim for spousal support, the sum of $25,000. A $4,000 payment was due immediately, $18,500 was due within 30 days, and the remaining $2,500 was due by the time of the final divorce decree. On these facts the trial court could not have found a gross disparity between the value transferred and the consideration which she received. To the contrary, based on the evidence before the trial court Mrs. Drewry received more than fifty percent of the value of the marital property.

Absent evidence of "gross disparity in value exchanged" there exists no basis to claim unconscionability; thus in this context consideration whether one party was guilty of overreaching and the other susceptible thereto is unnecessary. The trial court did not err in ruling that the agreement was not unconscionable.

Accordingly, we affirm the trial court's decision.

*Affirmed.*

Koontz, C.J., and Moon, J., concurred.