COURT OF APPEALS OF VIRGINIA

Present:   Judges Benton, Humphreys and Senior Judge Overton

KATHY MARTIN AREY

                                                    MEMORANDUM OPINION[*]
v.        Record No. 0801-05-3                            PER CURIAM
                                                    SEPTEMBER 13, 2005
RANDOLPH WILLIAM AREY


              FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
                         Thomas H. Wood, Judge

              (Frankie C. Coyner, on brief), for appellant.

              (Christopher C. Graham; Eustis & Graham, P.C., on brief), for
              appellee.


        Kathy Martin Arey, wife, contends the trial court erred in finding that she was competent to

execute the parties' property settlement agreement.  Upon reviewing the record and briefs of the

parties, we conclude that this appeal is without merit.  Accordingly, we summarily affirm the

decision of the trial court.  See Rule 5A:27.

        At trial, wife's burden was to prove by clear and convincing evidence the agreement was

invalid.  See Drewry v. Drewry, 8 Va. App. 460, 463, 383 S.E.2d 12, 12 (1989).  "On appeal, we

review the evidence in the light most favorable to [husband] the prevailing party and determine

whether that evidence established as a matter of law [a basis upon which] to vitiate the

agreement and decree."  Id. at 463, 383 S.E.2d at 12-13.

        The parties were married on May 1, 1968.  In February 2000, the parties separated after

husband, Randolph William Arey, discovered that wife had forged his name on several checks.

As a condition to continuing the marriage, husband insisted that wife execute a property

_____
        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

settlement agreement and that she seek professional treatment. Wife had been previously diagnosed and treated for bipolar disorder.

Husband's attorney prepared the agreement. On March 10, 2000, wife signed the agreement after reviewing it at home. At husband's request, she added her handwritten notations on a blank sheet entitled "SCHEDULE A- DISCLOSURE RE: Kathy Martin Arey, WIFE." Wife's schedule listed the following: "money & property left by mother; clothes; TV; living room suit; my shot gun; dresser; bedroom suit & bedspreads; all pictures & decorations; curtains & accessories; my jewery [sic]; decoration, etc. at Smith Mt. Lake." At the time she created this list, husband had already written a number of items on a blank sheet entitled "SCHEDULE B- DISCLOSURE RE: Randolph William Arey, HUSBAND." Husband's items on Schedule B included: "all retirement benefits; house and 7 acres on Rt. 619; trailer and .96 acres at Smith Lake; land in Buckingham County; all vehicles in my name; all guns and personal things; boats and all fishing equipment; any money or property left by parents."

Four days after signing the agreement, wife consulted a psychiatrist, Dr. Michael Cesta. Dr. Cesta testified that wife was in an "acute stage" of bipolar affective disorder, and he opined that she would not have been able to "appreciate" the consequences of signing a contract on March 14. Dr. Cesta was not able, however, to offer an opinion as to her condition the day when she executed the agreement. Furthermore, Dr. Cesta admitted on cross-examination that his examination of wife on March 14 indicated that she was "not delusional," that her "thought processes were linear and logical," and that she had "no perceptual alterations."

Also testifying on behalf of wife was another treating psychiatrist, Dr. Timothy Kane. Although Dr. Kane was not treating wife in March 2000, his opinion was that her condition on March 14 "could not have reasonably developed in four days." Therefore, he opined that she could not have "appreciat[ed] the nature and impact of a legal agreement" on March 10.

Dr. Barbara Haskins, a psychiatrist testifying on behalf of husband, opined that wife was competent to execute the agreement. She reached this opinion after reviewing the records of Dr. Cesta and Dr. Kane, the agreement, and a journal wife had kept for her brother-in-law during his divorce. Dr. Haskins noted that wife's journal was grammatically correct, her thoughts were complete, and her entries were "consistent with logical thoughts." She described "her thinking as linear and logical, and her insight and judgment as fair." In addition, she pointed out that wife was being seen on an outpatient basis at the time she executed the agreement and that her medical records stated she was not delusional. Finally, Dr. Haskins found it significant that wife had actively participated in creating the agreement by drafting Schedule A in her own handwriting.

The evidence supports the trial court's determination that wife failed to present clear and convincing evidence that she "lacked the capacity to understand the nature and consequences" of the agreement. In Drewry, we held that a party seeking to establish incompetence for purposes of executing an agreement has a heavy burden.

> The law presumes that every adult party who executes an agreement is mentally competent to enter into a contract. A party may rebut that presumption by proof that when the person executed the agreement he or she lacked the capacity to understand the nature and consequences of the transaction. In order to be competent to enter into a legally binding obligation, a party is not required to exercise good judgment or to make wise decisions so long as he or she understands the nature and character of the agreement and consequences of entering into it. Thus, "weakness of mind short of insanity; or immaturity of reason in one who has obtained full age; or the mere absence of experience or skill upon the subject of the particular contract affords *per se*, no ground for relief at law or in equity."

8 Va. App. at 467, 383 S.E.2d at 15 (citations omitted).

The trial court weighed the conflicts in the expert testimony and did not find persuasive the opinions of two of the doctors. It found that Dr. Cesta's opinion was not persuasive because

it was inconsistent with his records and because he expressed uncertainty on cross-examination. Indeed, on cross-examination, he testified that he could not say wife was in the same condition on March 10 as she was on March 14. It gave little weight to Dr. Kane's testimony, which was based on a review of Dr. Cesta's reports. "The resolution of conflicting evidence bearing on an individual's mental capacity is a factual determination to be made by the trial court, and it will not be disturbed on appeal, unless plainly wrong or without evidence to support it." Id. (citations omitted). The trial court accepted as being more persuasive Dr. Haskins's testimony. We cannot say the trial court's resolution of conflicting expert testimony bearing on wife's mental capacity was plainly wrong or without evidence to support it.

The trial court also was entitled to rely on lay testimony in reaching its decision on wife's competency. Id. Testimony from lay witnesses familiar with the person's demeanor is valuable when judged credible. Id. at 468, 383 S.E.2d at 16. Three other witnesses who saw wife on an almost daily basis testified that she appeared "normal" during the relevant time period. We cannot say the trial court's reliance upon this lay testimony was improper.

The trial court relied heavily upon wife's testimony in reaching its decision. Wife, who continued to work on a full-time basis in March 2000, had a clear recollection of the events surrounding the execution of the agreement and was aware of the property that the parties owned. According to her testimony, she wrote Schedule A at her kitchen table to indicate "what she wanted." She admitted that she knew that husband "got most of the property" under the agreement and that she could have consulted a lawyer prior to signing it. At the time she executed the agreement, wife was working and assisting her brother-in-law in keeping a journal in his own divorce. By her own testimony, she understood the consequences of her actions in preparing Schedule A and signing the agreement.

Based on the record, we cannot say that the trial court's decision was plainly wrong or without evidence to support it.  Accordingly, we summarily affirm the trial court's judgment. Rule 5A:27.

Affirmed.