UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, Chafin and Senior Judge Annunziata

TAMEA FRANCO WOODWARD

MEMORANDUM OPINION[*]

v.      Record No. 0159-14-3                                                    PER CURIAM
                                                                                                   JUNE 3, 2014

ROBERT WAYNE WOODWARD, JR.

FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
J. Leyburn Mosby, Jr., Judge Designate

(E. Kyle McNew; L. Richard Padgett, Jr.; MichieHamlett, PLLC, on
briefs), for appellant.

(Thomas W. Roe, Jr.; C. Gregory Phillips; Spigle, Roe, Massey &
Clay, PLC; Phillips & Phillips, on brief), for appellee.


Tamea Franco Woodward (wife) appeals a final decree of divorce, which incorporated the

parties' post-nuptial agreement dated March 22, 2012 and executed April 11, 2012 (the post-nuptial

agreement). Wife argues that the trial court erred by (1) approving, confirming, ratifying, and

incorporating the post-nuptial agreement into the final decree of divorce because it was obtained by

Robert W. Woodward's (husband) "overreaching, oppressive, and coercive conduct at a time when

[w]ife was operating under impaired judgment"; (2) finding that the post-nuptial agreement was not

unconscionable; and (3) refusing wife's exhibits 1 and 3. Upon reviewing the record and briefs of

the parties, we conclude that this appeal is without merit. Accordingly, we summarily affirm the

decision of the trial court. See Rule 5A:27.

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

"When reviewing a trial court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 834 (2003) (citations omitted).

The parties entered into a pre-marital agreement on October 2, 2001. The pre-marital agreement stated that each party kept his/her separate property owned before the marriage and all income therefrom. It also stated that wife would receive a condominium located at Sailors Cove Road and husband would receive property located at Lakewood Drive. Further, the parties agreed to waive spousal support.

The parties married on October 10, 2001 and separated on March 22, 2012. During the marriage, the parties acquired numerous real estate properties, including income-producing properties. When they separated, the parties discussed their assets and made a handwritten list of the properties. On April 11, 2012, husband went to wife's office to present her with the post-nuptial agreement. While husband was at wife's office, her son checked on her and later testified that she was crying. Wife also called her attorney to discuss the agreement and was advised not to sign the post-nuptial agreement. The attorney's assistant testified that wife was crying when she called. During the negotiations, both parties added language to the post-nuptial agreement and signed it in the presence of husband's secretary. The parties agreed that wife would receive the Sailors Cove property, as well as property on Clearfield Road. The parties would own jointly three other properties, and husband would own the remaining properties. In addition, husband would pay wife $100,000.

Three days later, on April 14, 2012, husband and wife met for lunch. Wife signed several deeds conveying property to husband pursuant to the post-nuptial agreement. Husband gave wife the deeds to properties that she received under the post-nuptial agreement, as well as a

check for $100,000. A few days later, wife signed additional deeds for properties that husband received.

On April 17, 2012, wife admitted herself into a hospital. She testified that she had homicidal and suicidal thoughts because of the meeting with her husband on April 11, 2012 and the ramifications of the post-nuptial agreement.

On August 9, 2012, wife filed a complaint for divorce. She claimed that the post-nuptial agreement was unconscionable. Husband filed an answer and cross-complaint. On October 22, 2013, the trial court heard evidence, and the parties submitted written closing arguments. On December 18, 2013, the parties appeared before the trial court for final arguments, and the trial court issued its ruling. The trial court concluded that the post-nuptial agreement was not unconscionable because, although husband received more value in real estate, the disparity in values was not "so significant that it is unconscionable to set aside the marital agreement." On December 31, 2013, the trial court entered a final decree of divorce, which incorporated the post-nuptial agreement. This appeal followed.

ANALYSIS

*Assignments of error 1 and 2*

Wife argues that the trial court erred in finding that the post-nuptial agreement was not unconscionable. Wife argues that there was a gross disparity in the division of the assets, and husband acted with "overreaching, oppressive, and coercive conduct."

"'Any issue of unconscionability of a premarital agreement shall be decided by the court as a matter of law. Recitations in the agreement shall create a prima facie presumption that they are factually correct.'" Sims v. Sims, 55 Va. App. 340, 348, 685 S.E.2d 869, 873 (2009) (quoting Code § 20-151(B)). Here, recitations in the post-nuptial agreement stated that "this Agreement is entered into voluntarily without duress or coercion, . . . and each party considers

the terms of this Agreement to be fair, equitable and not unconscionable." "Therefore, pursuant to Code § 20-151(B), the presumption is that the agreement is not unconscionable." Sims, 55 Va. App. at 349, 685 S.E.2d at 873.

Wife "had the burden at trial to prove by clear and convincing evidence the grounds alleged to void or rescind the agreement." Drewry v. Drewry, 8 Va. App. 460, 463, 383 S.E.2d 12, 12 (1989). In order to meet her burden, wife was required to demonstrate that (1) a gross disparity existed in the division of assets and (2) the presence of overreaching or oppressive influences.[1] Galloway v. Galloway, 47 Va. App. 83, 92, 622 S.E.2d 267, 271 (2005) (citing Shenk v. Shenk, 39 Va. App. 161, 179 n.13, 571 S.E.2d 896, 905 n.13 (2002)).

> Historically, a bargain was unconscionable in an action at law if it was "'such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.'" Restatement (Second) of Contracts § 208 cmt. b (quoting Hume v. United States, 132 U.S. 406, 411 (1889)). If inadequacy of price or inequality in value are the only indicia of unconscionability, the case must be extreme to justify equitable relief. Smyth Bros. v. Beresford, 128 Va. 137, 169-70, 104 S.E. 371, 381-82 (1920). A person may legally agree to make a partial gift of his or her property or may legally make a bad bargain. Id.

Derby v. Derby, 8 Va. App. 19, 28, 378 S.E.2d 74, 78-79 (1989).

Wife argues that husband received significantly more value in assets than she did. Both parties presented evidence of the real estate and its value. Wife argued that she received only one piece of property, but the evidence contradicted this assertion. She received property on Clearfield Road. She also received the Sailors Cove property pursuant to the pre-nuptial agreement, and she and husband remained co-owners of three other properties. Lastly, her

---

[1] Contrary to wife's arguments, the record reflects that the trial court applied the correct analysis to determine whether the post-nuptial agreement was unconscionable. In its ruling, the trial court referred to several cases that discussed unconscionability, including Derby v. Derby, 8 Va. App. 19, 378 S.E.2d 74 (1989), and Sims, 55 Va. App. at 348, 685 S.E.2d at 873. In addition, the trial court analyzed the case with respect to wife's mental condition and the distribution of the parties' assets and debts.

- 4 -

exhibit of the distribution of real estate failed to take into account the $100,000 payment that she received from husband and the debt that he was assuming on one of the properties. The trial court acknowledged that "husband did get more in value of the real estate," but it was not "so significant that it is unconscionable to set aside the marital agreement."

Based on the record, we cannot conclude that the distribution of the property was "so gross as to shock the conscience." Smyth Bros., 128 Va. at 170, 104 S.E. at 382.

Wife claims that she was "operating under impaired judgment" when she signed the post-nuptial agreement. She points to the fact that she was hospitalized several days after she signed the post-nuptial agreement. "The law presumes that every adult party who executes an agreement is mentally competent to enter into a contract." Drewry, 8 Va. App. at 467, 383 S.E.2d at 15 (citing Chesapeake & Ohio Ry. Co. v. Mosby, 93 Va. 93, 94, 24 S.E. 916, 916 (1896)). "The resolution of conflicting evidence bearing on an individual's mental capacity is a factual determination to be made by the trial court, . . . and it will not be disturbed on appeal, unless plainly wrong or without evidence to support it." Id. (citations omitted).

After hearing all of the evidence, the trial court summarized the evidence. It noted that there was a letter from wife's psychologist who described wife's psychological condition, but "never really said that wife was incompetent at the time she signed these agreements and deeds." Although there was evidence that wife spoke with several people, including her attorney and her son on April 11, 2012, no one testified that that wife's mental status at the time prevented her from signing the post-nuptial agreement. In light of the evidence, the trial court concluded that wife was not "in some kind of severe mental state when she signed this agreement."

Wife further argues that during the negotiations, husband's actions were "overreaching, oppressive, and coercive," so the post-nuptial agreement was unconscionable. "Absent evidence of 'gross disparity in value exchanged' there exists no basis to claim unconscionability; thus in

- 5 -

this context consideration whether one party was guilty of overreaching and the other susceptible thereto is unnecessary." Id. at 473, 383 S.E.2d at 18.

Accordingly, the trial court did not err in holding that the post-nuptial agreement was not unconscionable.

*Assignment of error 3*

Wife argues that the trial court erred by not admitting two of her exhibits.

"Generally, the admissibility of evidence 'is within the broad discretion of the trial court, and an [evidentiary] ruling will not be disturbed on appeal in the absence of an abuse of discretion.'" Surles v. Mayer, 48 Va. App. 146, 177, 628 S.E.2d 563, 578 (2006) (quoting Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988)) (brackets in original).

The first exhibit contained two letters dated April 6, 2012 and April 10, 2012, which were written by wife's attorney to husband's attorney. The letters discussed the terms of the post-nuptial agreement and requested additional information. Husband objected to the admission of the letters because they were hearsay and reflected negotiations. The trial court sustained husband's objection because "[t]he letters appear to be a discussion about this postnuptial agreement, which could be in effect offers of compromise, and the attorney is not here for questioning about this matter."

The second exhibit was a draft of the post-nuptial agreement that the parties did not sign. The draft included handwritten notes, some of which were written by wife's attorney. The trial court refused to accept the exhibit because of the handwritten notes. However, it held that a "clean copy" of the draft would be admissible. Wife did not have a "clean copy" for the court.

Assuming without deciding that the trial court erred in excluding the two exhibits, we conclude that any such error was harmless. Non-constitutional error is harmless "[w]hen it

plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached . . . ." Code § 8.01-248.

> "If, when all is said and done, [it is clear] that the error did not influence the [fact finder], or had but slight effect, . . . the judgment should stand . . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected . . . . If so, or if one is left in grave doubt, the [judgment] cannot stand."

Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731-32 (2001) (quoting Kotteakos v. United States, 328 U.S. 750, 764-65 (1946)); see also Andrews v. Creacey, 56 Va. App. 606, 625, 696 S.E.2d 218, 227 (2010).

The post-nuptial agreement states in the recitations that "each party has been advised of the financial and personal status of the other." As noted above, the recitations are presumed "factually correct." Code § 20-151(B).

In addition, the trial court stated, "I think Mrs. Woodward knew Mr. Woodward's financial situation. . . . [S]he certainly had a working knowledge of all of the properties they had and was able to understand the ramifications of what she was doing." Wife testified about the properties and husband's reluctance to share financial information about the properties. The admission of the attorney's letters would not have impacted the trial court's findings.

Likewise, the admission of the draft of the post-nuptial agreement would not have influenced the trial court. Wife testified about the parties' negotiations and the circumstances in which she signed the post-nuptial agreement. A draft with notes would not have changed the outcome. Furthermore, the trial court stated that it would allow the draft into evidence if wife had a "clean copy" without the handwritten notes, but wife did not have one.

Consequently, any error in denying the admission of these two exhibits was harmless.

CONCLUSION

For the foregoing reasons, the trial court's ruling is summarily affirmed.  Rule 5A:27.

Affirmed.