COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Humphreys, Ortiz and Chaney
Argued at Lexington, Virginia


CAROL A. SHIFFLET

v.      Record No. 0606-21-3

DANIEL P. SHIFFLET

MEMORANDUM OPINION* BY
JUDGE ROBERT J. HUMPHREYS
JANUARY 11, 2022

FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
W. Chapman Goodwin, Judge

Danita S. Alt for appellant.

James B. Glick (Vellines, Glick & Whitesell, P.C., on brief), for
appellee.


At an *ore tenus* hearing conducted on January 22, 2020, before the Circuit Court for

Augusta County, appellee-plaintiff Daniel P. Shifflet ("husband") sought to confirm the

enforceability of a premarital agreement signed on September 22, 1997, between him and his

wife, appellant-defendant Carol A. Shifflet ("wife"). The circuit court found that the agreement

was valid and enforceable under the Premarital Agreement Act ("the PAA"), Code §§ 20-147

to -155. Wife appealed and argues that the circuit court erred by making findings contrary to the

evidence.

BACKGROUND

This Court will "give deference to the trial court's factual findings and view the facts in

the light most favorable to the prevailing party." *Tuttle v. Webb*, 284 Va. 319, 324 (2012).

Husband and wife married on September 27, 1997. Prior to marriage, husband and wife lived

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

together in a relationship analogous to marriage for some years, although they were not yet legally married. Wife initially moved in with husband with her daughter from another relationship. During this time in the relationship, husband worked for a company called McQuay International and told wife everything about his finances; wife had inconsistent employment and she paid the parties' bills using husband's money. Wife also told husband that she didn't need money because she believed she was going to inherit a coal mine.

At some point during this period, wife lost her job and husband pressed her to find another. Following this argument, wife left the household without giving notification to husband. Over the next few months husband and wife reconciled and resumed their relationship; however, husband testified that this breakup created trust issues.

Eventually, wife wanted to get married. Husband testified that he did not want to get married because he had trust issues from their previous breakup. As part of these conversations husband told wife that he would marry her, but he would not pay for anything and demanded a premarital agreement. Husband repeatedly told wife throughout the planning of the wedding, and at least six months prior to the wedding, that he wanted a premarital agreement. However, husband told wife that their relationship could continue as usual without a marriage.

Wife asked husband who she should hire to draft the premarital agreement, and he mentioned John Hooe, an attorney who had conducted closings for husband's real estate business. Husband testified that wife set up the premarital agreement and the meeting with Mr. Hooe. Five days before the wedding, husband and wife drove together to Mr. Hooe's office, went over the agreement line by line, made some alterations, and then signed the agreement. The agreement specified that each party would keep their separate property and that wife would waive any interest that she held in husband's business. The agreement included recitations that

the parties made fair disclosures of their property and that each had the opportunity to consult with counsel. Additionally, husband testified that wife received a copy of the agreement.

Wife testified that as a child she was the victim of sexual and emotional abuse at the hands of her family members and that husband was aware of this fact. Wife described a tumultuous relationship with husband in which he was verbally and emotionally abusive, but not physically abusive. Wife claimed that husband's outbursts happened every few months. Husband admitted that he would call wife names but maintained that the verbal abuse was mutual. Wife testified that the first time she heard that husband wanted a prenuptial agreement was several weeks before the wedding. She testified that husband set up the meeting with Mr. Hooe, directed her to get in the car with him, and drove her to Mr. Hooe's office where she was told to sign the agreement. Wife contested husband's testimony that Mr. Hooe read the agreement to them. Wife said that she signed the agreement because husband would not marry her otherwise. She also testified that she was not given a copy of the agreement.

At the hearing, wife called her professional counselor as a witness, Hillary Richards. Richards was admitted as an expert in domestic abuse and the psychology of domestic abuse. Richards testified that, based only on her observations of wife, that wife was incapable of contravening husband's wishes. When asked to speculate as to whether wife had the ability to decline to sign the premarital agreement, Richards testified that she did not believe that there was "any ability there." Richards could not cite specific research supporting her claim. Additionally, Richards did not interview husband, did not review records from 1997, and only started seeing wife in 2019, twenty-two years after the execution of the agreement.

Wife also called her children, Amber Shull and Shannon Shifflet, to testify as to the alleged emotional abuse by husband. Amber Shull was eleven at the time husband and wife married and, contrary to wife's testimony, testified that husband would call wife names "most of

- 3 -

the time." Shannon Shifflet was born after the execution of the agreement and also testified that husband was emotionally abusive to wife.

On March 31, 2020, the circuit court issued a letter opinion finding that wife had not met her burden of proving that the agreement was unenforceable. Specifically, the circuit court found that wife failed to present clear and convincing evidence that the agreement was the result of overreaching or oppressive influences and was therefore not unconscionable. The circuit court directed counsel for husband to prepare an order for entry, which was duly entered on July 20, 2020. Wife objected to this ruling for the exact same reasons noted in her assignments of error in this appeal.

On May 27, 2021, the circuit court entered a final decree of divorce, incorporating the premarital agreement. Wife's counsel noted her objections to the entry of the order for the same reasons as earlier stated, and the circuit court reaffirmed its letter opinion.

ANALYSIS

Although wife makes eleven assignments of error, they all relate to the circuit court's factual findings and can easily be condensed into three basic categories: the circuit court erred by finding that husband made a fair disclosure of assets, the court erred by finding that wife was not coerced into signing the agreement, and the circuit court erred by disregarding wife's evidence.

At the *ore tenus* hearing, wife asked the circuit court to find the agreement unenforceable under the PAA. Under the PAA, an agreement is unenforceable if it

> was unconscionable when it was executed *and*, before execution of the agreement, that person (i) was not provided *a fair and reasonable disclosure* of the property or financial obligations of the other party; *and* (ii) did not voluntarily and expressly waive, in writing, any right to disclosure of the property or financial obligations of the other party beyond the disclosure provided.

- 4 -

Code § 20-151(A)(2) (emphasis added).[1]  Additionally, the PAA provides that "[r]ecitations in

the agreement shall create a *prima facie* presumption that they are factually correct."  Code

§ 20-151(B).

Our case law establishes that an agreement is unconscionable if (1) there is a "gross

disparity in the value exchanged" and (2) if "oppressive influences affected the agreement to the

extent that the process was unfair and the terms of the resulting agreement unconscionable."

*Derby v. Derby*, 8 Va. App. 19, 28 (1989); *Drewry v. Drewry*, 8 Va. App. 460, 472 (1989)

(quoting *Derby*, 8 Va. App. at 28).

"While the question of unconscionability is a matter of law, the underlying facts must be

determined by the fact finder."  *Galloway v. Galloway*, 47 Va. App. 83, 92 (2005).  In other

words, it is for the fact finder to determine what, if any, disparity exists in the value exchanged,

and what, if any, oppressive influences affected the agreement; the ultimate conclusion from

those facts is a question of law.  Finally, the PAA and our case law places the burden on wife to

prove by clear and convincing evidence that the agreement is unenforceable.  *Sims v. Sims*, 55

Va. App. 340, 349 (2009) (quoting *Drewry*, 8 Va. App. at 463).

### A.  The Disclosure of Assets

Wife argues in her first assignment of error that "[t]he [c]ourt erred in determining that

the Plaintiff and Defendant made full disclosures of their assets prior to the Premarital

Agreement."  However, this argument's premise is flawed.  The circuit court did not find that the

parties made a "full disclosure of their assets," nor does the Code require them to do so.  The

---

[1] An agreement may also be unenforceable under the PAA if a party "did not execute the agreement voluntarily."  Code § 20-151(A)(1).  On brief, wife attempts to argue that the circuit court also erred by finding that the agreement was executed voluntarily.  However, in her written argument to the circuit court, wife only argued that the alleged abuse by husband made the agreement unconscionable.  Accordingly, wife has failed to preserve this argument for appeal. *See* Rule 5A:18.

circuit court ruled that husband made an "adequate" disclosure of his assets. When an appellant "has assigned error to a ruling that the circuit court did not make, the circuit court could not and did not err in the manner alleged by [appellant] in the assignment of error. Thus, we cannot take cognizance of the claimed error." *Geouge v. Traylor*, 68 Va. App. 343, 373 (2017) (citing *Culpeper Reg'l Hosp. v. Jones*, 64 Va. App. 207, 212 n.2 (2015)); *see also* Rule 5A:20(c)(1). Therefore, the circuit court did not err in the manner alleged by wife in assignment of error one.

## B. Husband's Alleged Coercion

Wife's assignments of error two, three, five, ten, and eleven all assign error to the circuit court's finding that the husband did not coerce wife into signing the agreement and that wife was able to make an informed decision as to whether she should sign the agreement.[2] Wife's

---

[2] Specifically, wife assigned the following errors:

2. The Court erred in finding the actions of the Plaintiff were not so overbearing as to be coercive.

3. The Court erred in not finding the actions of the Plaintiff to be overbearing to be coercive [sic] even though he did not insist upon a premarital agreement until five days prior to the wedding in which the Defendant had already cashed out her retirement and had already paid for the wedding.

5. The Court erred in not finding that the level of the emotional abuse by the Plaintiff did not take away the ability of the Defendant to make informed decisions such as insisting on reading and understanding the premarital agreement.

10. The Court erred in not finding that the Defendant was forced and coerced into signing the premarital agreement without reading it or knowing what was in it when it was clear after 20 plus years of marriage everything was placed in the Plaintiff's name even though the testimony was undisputed that three million dollars of assets were all accumulated during the marriage except for a home.

assignments of error attack the circuit court's factual findings underlying its legal conclusion that the agreement was not unconscionable. *See Galloway*, 47 Va. App. at 92. This Court will not set aside factual findings by the circuit court on the grounds that those findings are contrary to the evidence "unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it." Code § 8.01-680.

The record contains substantial support for the circuit court's findings. Husband told wife at least six months prior to the wedding that he insisted on a premarital agreement. Wife set up the drafting of the premarital agreement with Mr. Hooe. Husband and wife went to Mr. Hooe's office together, reviewed the document with Mr. Hooe, made changes to the document, and signed and notarized the agreement. Husband did not threaten to evict wife from the home if they weren't married or if she didn't sign the agreement; indeed, he told her that their relationship would continue as it had for the previous ten years. While the evidence does show that husband and wife had a tumultuous relationship prior to their marriage, husband testified that the verbal abuse was mutual. Wife would not be rendered penniless under the agreement, and she was fully capable of providing for herself. There is no evidence in the record that wife was unaware of the nature of the document, and husband's evidence is that she was aware of the contents of the document. Accordingly, the circuit court did not err by finding that husband did not coerce wife into signing the agreement and that wife was capable of entering into a binding contract.

---

11. The Court erred in finding the level of abuse was not so overbearing as to be coercive after testimony of the Plaintiff's only two children that he "disowned" them when they stood up to him.

C.  Wife's Evidence

Wife's assignments of error four, six, seven, eight, and nine all allege that the circuit court erred by disregarding wife's evidence.[3]  "[A] trial court is not required to accept the opinion of an expert . . . . 'It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony.'"  *Piatt v. Piatt*, 27 Va. App. 426, 434 (1998) (citations omitted) (quoting *Street v. Street*, 25 Va. App. 380, 387 (1997) (*en banc*)).  In determining the weight to be given the testimony of an expert witness, the fact finder may consider the basis for the expert's opinion.  *Gilbert v. Summers*, 240 Va. 155 (1990).  While wife correctly notes that

_____

[3] Specifically, wife assigned error to the following rulings:

    4.  The Court erred in disregarding the testimony of the Defendant and their children as to the mental and emotional abuse of the Plaintiff.

    6.  The Court erred in totally disregarding the expert testimony in this matter in which the expert testified that due to the years of emotional and sexual abuse, the Defendant would not have the ability to stand up to a dominant person.

    7.  The Court erred in disregarding the testimony of the expert as she had not spoken to the Plaintiff without any expert testimony that she would have needed to do that in order to form her opinion.

    8.  The Court erred in disregarding the testimony of the expert witness due to the fact that she did not have her research present in court as the court had already qualified her as an expert at that time.

    9.  The Court erred in not finding the testimony of the Defendant clear and convincing as to what happened at the attorney's office when the Premarital agreement was signed as the daughter testified the Plaintiff had two copies of the premarital agreement in his safe which he showed her.  It was undisputed the Defendant had to ask the Plaintiff for a copy.

the circuit court is not permitted to "disregard uncontradicted evidence of unimpeached witnesses which is not . . . inconsistent with the facts appearing in the record," there is substantial evidence in the record that contradicted wife's evidence. *Hodge v. Am. Family Life Assur. Co. of Columbus*, 213 Va. 30, 31 (1972). As such, we may not "substitute our judgment for that of the trier of fact," *Wactor v. Commonwealth*, 38 Va. App. 375, 380 (2002) (quoting *Commonwealth v. Presley*, 256 Va. 465, 466 (1998)), nor may we "reweigh the evidence," *Nusbaum v. Berlin*, 273 Va. 385, 408 (2007), because we have no authority "to preside *de novo* over a second trial," *Haskins v. Commonwealth*, 44 Va. App. 1, 11 (2004).

Here, the circuit court had reason to doubt the testimony of wife's expert, Hillary Richards. Richards only began consulting with wife twenty-two years after the execution of the agreement. Her opinion was based exclusively on facts told to her by wife; Richards never interviewed husband. Richards was also unable to specifically recall the research upon which she based her conclusion. These factors all go to the weight of the evidence, and the circuit court clearly considered them when determining the weight of Richards' testimony.

Additionally, there is evidence in the record that is inconsistent with wife's evidence that she was incapable of making decisions or standing up to people. Wife sold over twenty houses for husband as a realtor. Wife initiated conversations about getting married and repeatedly pushed for marriage despite husband's objections. Wife also temporarily moved out of the shared residence prior to marriage. Wife testified that the reason she signed the agreement was "because he wouldn't marry me if I didn't . . . I love him," not that she felt that she was forced to sign.

Although wife's testimony and the testimony of her witnesses conflict with husband's testimony, the circuit court was entitled to weigh husband's evidence more heavily than wife's and did not commit error by doing so.

- 9 -

## CONCLUSION

In short, we find that circuit court did not err.  Wife had the burden of proof to show by clear and convincing evidence that the agreement was unenforceable.  Despite wife's testimony, and the testimony of her children and expert, the record supports the circuit court's finding that wife did not present clear and convincing evidence that the agreement was the result of overreaching or oppressive influences.  For this reason, we affirm the ruling of the circuit court.

Affirmed.