## LAW AND EQUITY COURT OF THE CITY OF RICHMOND

Central National Bank
of Richmond

v.

Richard H. Warner

March 14, 1961

By JUDGE ALEX H. SANDS, JR.

The sole issue for consideration is whether the defendant, Richard H. Warner, possessed sufficient mental capacity to execute the note in question as co-maker on June 4, 1959.

At the outset, the law in this state is no different from that of most other jurisdictions to the effect that the law presumes that there is, in every person, capacity to contract and that the burden is upon the person claiming an exemption under this rule to establish incapacity. *C. & O. v. Mosby*, 93 Va. 93, 94 (1896).

It seems also to be well established that mere weakness of mind, immaturity of reasoning, or mere absence of experience or skill upon the matter under contract affords *per se* no ground for a claim of incapacity (*Mosby* case, *supra*), but additional facts, if proven, may establish such incapacity. *Id.*

As pointed out in *Lohman v. Sherwood*, 181 Va. 594 (1943), there is no positive rule of thumb which can be applied to solve the question of mental capacity in a given case. In any case in which the question is whether sufficient mental capacity to execute an instrument exists the answer must depend primarily upon the determination of whether *at the time of the execution of the instrument in question*, the person so executing has sufficient mental

capacity to understand the nature of the transaction being entered into. *Id*.

Applying this test to the facts as adduced by the evidence in this case, the conclusion seems inescapable that Warner did not have the mental capacity to execute the note in question at the time of its execution. After listening to Warner on the witness stand and observing his approach and answers to the questions propounded, it is fairly apparent to me that the man had little, if indeed any, appreciation of the nature of, and certainly none of the possible results to be expected from, the transaction into which he was entering. Not only did he have no conception of what the word "security" meant in it technical sense, but what is far more important, he did not seem to understand, much less appreciate, the possible consequences of his act in signing the note. It is true that the history of past business transactions as shown upon his financial statement to plaintiff might, taken at face value, have been consistent with an average mental capacity, yet it developed that in each instance, the transaction had actually been conducted by, or under the guidance of, the defendant's mother. He was obviously unaware of either the purpose or the intended effect of the chattel mortgage which has been executed by Hodges on his behalf.

The most cogent evidence on the point was that offered by Dr. Weir Tucker who had examined the defendant in 1954 and again in 1960. In the concluding paragraph of Dr. Tucker's report upon the condition of defendant under date of October 5, 1960 (Defendant's Exhibit A), he states:

It is my opinion that fundamentally Mr. Warner is *incompetent*, mentally retarded, and epileptic. (Italics supplied).

These are strong words from one of the most outstanding neurologists in this area.

While the fact that defendant had been legally committed to a Lynchburg mental institution in the early 1940's and was paroled in 1943 would have no probative value standing alone, *Waddy v. Grimes*, 154 Va. 615 (1930), yet it becomes vital in view of the following question and answer:

*Question by Court*: "Dr. Tucker, from your experience with this particular patient, including your own treatment and examinations in 1954 and 1960 and his history and records while in Lynchburg Training School, or other of his records which you may have studied, could you tell us how Mr. Warner's mental condition and capacity for understanding simple business dealings on June 5, 1959, compared with those existing in the patient at the time of his legal commitment to the mental institution in Lynchburg. Were they better, the same, or worse on June 4, 1959, than at the time of his legal commitment?"

*Answer*: "They were substantially the same; certainly no better. He is, and was at the date of his commitment, incompetent and unable to understand any business affairs."

Again, when given a hypothetical question summarizing the facts surrounding the execution of the note and asked whether he believed that defendant was mentally capable of understanding the transaction, his reply was: "It is my opinion that he was not."

I have reviewed all of the cases cited and do not find them in conflict but rather in accord with the views above expressed.

Judgment will be entered for the defendant.