COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Elder and Clements
Argued at Salem, Virginia


MICHAEL F. COLOCCIA,
  BY AND THROUGH HIS NEXT FRIEND,
  CYNTHIA CORTESE,
                                                    MEMORANDUM OPINION[*] BY
v.       Record No. 1787-06-3                       JUDGE LARRY G. ELDER
                                                         MARCH 6, 2007
LORNA D. COLOCCIA


                FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
                              Thomas H. Wood, Judge

            Frankie C. Coyner for appellant.

            (Walter F. Green, IV, on brief), for appellee.


       Michael F. Coloccia (husband), by his next friend, Cynthia Cortese,[1] appeals from a

decision of the Augusta County Circuit Court upholding the validity of the property settlement

agreement he entered into with Lorna D. Coloccia (wife).  On appeal, husband contends the court

erred in refusing to invalidate the property settlement agreement.[2]  We hold the evidence supports

_____

       [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

       [1] Husband filed his original bill of complaint in the trial court in his own name but
subsequently moved the trial court for leave to file an amended complaint through his next
friend, Cynthia Cortese, his sister.  The trial court granted husband's request.  Although the
record contains some inconsistencies in the way various documents are styled, the record
confirms that the style of the case, as amended, includes language indicating Michael F. Coloccia
has proceeded at all relevant times in this matter "By and Through His Next Friend, Cynthia
Cortese."

       [2] The parties do not challenge the court's authority to set aside the divorce based on a
finding that they had not lived separate and apart for six months prior to entry of the decree, and
we do not address this issue on appeal.
       As to the authority of the trial court to consider husband's challenge to the validity of the
incorporated property settlement agreement based on a claim of incompetency, we hold the court

the trial court's finding that husband failed to prove by clear and convincing evidence that he was incompetent when he executed the property settlement agreement. Thus, we affirm the trial court's refusal to set aside the agreement.

In Virginia, "'marital property settlement agreements entered into by competent parties upon valid consideration for lawful purposes are favored in the law and such will be enforced unless their illegality is clear and certain.'" Parra v. Parra, 1 Va. App. 118, 128, 336 S.E.2d 157, 162 (1985) (quoting Cooley v. Cooley, 220 Va. 749, 752, 263 S.E.2d 49, 52 (1980)). "The law presumes that every adult party who executes an agreement is mentally competent to enter into a contract." Drewry v. Drewry, 8 Va. App. 460, 467, 383 S.E.2d 12, 15 (1989). A party seeking to void a facially valid agreement on the ground that he lacked the mental capacity to enter into it bears the burden of proving his incompetence by clear and convincing evidence. Id. at 463, 383 S.E.2d at 12. "The resolution of conflicting evidence bearing on an individual's mental capacity is a factual determination to be made by the trial court." Id. at 467, 383 S.E.2d at 15. On appeal, we view the evidence in the light most favorable to the prevailing party and determine whether that evidence was sufficient to prove "the grounds relied upon to vitiate the agreement." Id. at 463, 383 S.E.2d at 12.

---

had subject matter jurisdiction to consider that challenge via a bill of review and that it implicitly construed husband's pleading filed March 1, 2005, as a bill of review. Husband's pleading was filed within six months after entry of the final decree and execution of the property settlement agreement as permitted by Code § 8.01-623.

Although Code § 8.01-623 required husband to obtain leave of court to file the bill because it was not based on an "error of law apparent upon the face of the record," the trial court implicitly granted that leave by acting on husband's filing. We hold any right to object to husband's failure to seek leave of court prior to his March 1, 2005 filing has been waived. See, e.g., Moore v. Commonwealth, 259 Va. 431, 437, 527 S.E.2d 406, 409 (2000) ("emphasizing the necessary distinction to be drawn . . . between the power of a court to adjudicate a specified class of cases, commonly known as 'subject matter jurisdiction,' and the authority of a court to exercise that power in a particular case"), overruled on other grounds by Nelson v. Warden, 262 Va. 276, 281, 552 S.E.2d 73, 75 (2001).

In order for a party to be competent to enter into a legally binding contract, he "must have 'sufficient mental capacity to understand the nature and effect of the transaction.'" Id. at 467, 383 S.E.2d at 15 (quoting Price's Ex'r v. Barham, 147 Va. 478, 482, 137 S.E. 511, 512 (1927)).

> [A] party is not required to exercise good judgment or to make wise decisions so long as he or she understands the nature and character of the agreement and consequences of entering into it. Thus, "weakness of mind short of insanity; or immaturity of reason in one who has obtained full age; or the mere absence of experience or skill upon the subject of the particular contract affords per se, no ground for relief at law or in equity."

Id. (quoting Chesapeake & Ohio Ry. Co. v. Mosby, 93 Va. 93, 94, 24 S.E. 916, 916 (1896)). Although "the party's capacity or condition before and after executing the agreement is relevant evidence to determine competency, . . . the dispositive question is the individual's mental capacity to understand the nature of the agreement and the consequences of his or her act at the time the agreement is executed." Id. Relevant evidence includes "testimony from lay witnesses acquainted with the person, opinions of doctors or psychiatrists who have treated or examined the party, and testimony of witnesses who observed the person negotiate or sign the contract." Id.

We applied these principles in Drewry, in which we held that Mrs. Drewry failed to prove by clear and convincing evidence that her depression rendered her incompetent to enter into a legally binding property settlement agreement with Mr. Drewry. 8 Va. App. at 468-69, 383 S.E.2d at 15-16. Mrs. Drewry contended the testimony of her treating psychiatrist, Dr. Luedke, that "she was 'totally incompetent to reason through any important legal document' due to her mental disorder on the day she signed the agreement" "unequivocally established that she was unable to comprehend the nature and consequences of her actions" at the relevant time. Id. at 466, 468, 383 S.E.2d at 14, 15. We rejected that contention, emphasizing as follows: "Dr. Luedke testified that Mrs. Drewry lacked the ability to 'reason through any important legal document' due to the severity of her depression. He did not address whether she comprehended the nature and character of her

agreement and the consequences of executing a legal document." Id. at 469, 383 S.E.2d at 16. We also noted that Mr. Drewry's attorney, who had been "employed . . . to draft the agreement[] and . . . knew of Mrs. Drewry's hospitalization, testified that he observed nothing from her demeanor which caused him to question her capacity to contract or whether she understood the terms and nature of the agreement." Id. at 468, 383 S.E.2d at 15. Finally, we noted the testimony of Mr. Drewry and other lay witnesses with no known financial interest in the outcome of the case "that they observed nothing about Mrs. Drewry's behavior which caused them to question her mental competency." Id.

Here, similar to Drewry, husband's best evidence was the testimony of his treating neurologist, Patricia Shipley, who examined him on December 6, 2004, within three days of when the parties signed the separation agreement. Dr. Shipley testified that, at that time, because of husband's dementia, his "ability to understand a legal contract with various terms in it" "would [have] be[en] compromised" and that it would have been "difficult" for him to "read different paragraphs" and "process the information in his head." However, like in Drewry, Dr. Shipley did not "address whether [husband] comprehended the nature and character of [his] agreement and the consequences of executing a legal document." Id. at 469, 383 S.E.2d at 16. Dr. Shipley's conclusions that husband had "short-term memory problems" and "difficulty with his thinking" also did not compel the conclusion, by clear and convincing evidence, that he did not "comprehend the nature and character of [his] agreement and the consequences of executing a legal document." Id.

Finally, wife's report to Dr. Shipley on December 6, 2004, that husband's short-term memory was worsening--evidenced by the fact that he forgot conversations and telephone messages and could no longer keep score while playing golf--and her admission at the March 2006 hearing that she knew husband was not "on equal footing" with her when they executed the agreement in December 2004 do not compel the conclusion that husband did not at that time "comprehend the nature and character of [his] agreement and the consequences of executing a legal document." The

- 4 -

trial court, as the finder of fact, was entitled to judge the credibility of the witnesses and was entitled, as it did, to credit wife's and her lawyer's testimony that tended to indicate husband did, in fact, know what he was doing when he signed the property settlement agreement and other documents. Wife testified that she and husband had talked about the division of property and "all the issues in the separation agreement" over the course of at least several months prior to execution of the agreement. She testified, "In the separation agreement it was exactly as we had always discussed everything would be. He would have none of the debt, none of the worries and be given -- I pay for all of his health insurance, the long-term care insurance and give him some cash." Wife received the house, which she had inherited from her mother during the marriage, as well as most of the money she had inherited from her mother. Finally, wife testified that husband read the agreement prior to signing it and that, in her opinion, he understood its contents at that time.

The trial court was not required to accept husband's statement, given 15 months later at the March 2006 hearing when his Alzheimer's-related dementia likely had progressed further, that he "didn't realize what was going on" in December 2004 when they went to the lawyer's office and he "signed a paper." Husband admitted at the March 2006 hearing that he "probably" "read[] papers at the lawyer's office" but that he "[didn't] remember." His testimony at the March 2006 hearing indicated he was, at that time, uncertain about many of the events of December 2004.

Thus, the evidence, viewed in the light most favorable to wife, supported the trial court's determination that husband failed to establish by clear and convincing evidence he was incompetent at the time he entered into the property settlement agreement. Accordingly, we affirm the trial court's refusal to set aside the property settlement agreement on this ground.

Affirmed.